DEWEY RITENOUR, Plaintiff-Appellee, *v.* THE POLICE BOARD OF THE CITY OF CHICAGO *et al.*, Defendants-Appellants.

First District (5th Division)   No. 76-1335

Opinion filed October 7, 1977.—Rehearing denied November 17, 1977.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Jerome A. Siegan, Assistant Corporation Counsel, of counsel), for appellants.

Raymond J. Smith, of Chicago, for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

In an action brought under the Administrative Review Act (the Act) (Ill. Rev. Stat. 1973, ch. 110, par. 264 *et seq.*), the trial court reversed a decision of the Chicago Police Board (Board) discharging plaintiff. On appeal, the following contentions are presented: (1) that the Board's findings and conclusions were based on improperly admitted evidence; and (2) that the manifest weight of the evidence supports the findings of the Board.

It appears that at approximately 8:30 on the evening of December 31, 1974, someone shot out a street lamp in an alley in the vicinity of 1844 West Grace Street, and that two persons residing at that address heard the shot. One of them, Caroline Kelley, upon looking out saw a man standing in the alley next to a car with an open door. She saw him enter the car and, as he drove away, Kelley asked Oscar Whitehead (her boarder) to get the

license number of the car. Whitehead, who had also heard the shot, ran after the car and observed the license plate number as the car was at a nearby traffic stop sign. Later, he described the car to the police as a gold or yellow 1963 or 1964 Chevrolet Camaro, with license number DR 7897. That number was registered to a car owned by plaintiff and, at his home that evening, a police officer questioned him about the shooting incident and the fact that his license plate was seen on a car in the vicinity of the occurrence. Plaintiff told the officer that he had been at home all evening and had not been at the location of the firing that evening; that he had not been aware prior thereto of a missing front license plate; and that his car was a 1972 blue Datsun.

On January 7, 1975, Sergeant Dorff and Investigator Hovland examined a mercury vapor street lamp located in the alley behind 1844 West Grace Street. From the ground they each saw a small hole in both the glass and the reflector. At Dorff's request, the Bureau of Electricity sent two of its employees to open the lamp fixture. When one of them removed the glass and reflector from the lamp fixture, two metal fragments fell to the ground. The particles were picked up by the two men and given to Dorff, who put them in his pocket and brought them to the crime lab for analysis.

On January 9, 1975, Dorff, in the presence of plaintiff's attorney, obtained a statement from plaintiff in which he listed the manufacturer, the model, and the serial number of each firearm he owned. At Dorff's request, plaintiff submitted four of his handguns to the crime lab, where they were test-fired by Sergeant Smith, a ballistics expert, and immediately returned to plaintiff. Subsequently, the metal fragments found at the scene were found by Smith to be portions of bullets fired from one of plaintiff's handguns, a Smith & Wesson.

Plaintiff was then charged with violations of the following departmental rules: "Rule 2 Any action or conduct which impedes the Department's efforts to achieve its goals, or brings discredit upon the Department. Rule 38 Unlawful or unnecessary use of display of a weapon. Rule 39 Failure to immediately make an oral report to the desk sergeant at the District of occurrence and to follow such oral report with a written report on the prescribed form, whenever a firearm is discharged by a member."

At the hearing, plaintiff's written statement containing an admission of ownership of the Smith & Wesson handgun linked to the bullet fragments found in the lamp fixture was admitted into evidence. Plaintiff stated that he had been in a traffic accident early on December 31, 1974. His car, a 1972 Datsun, was damaged, and he was injured. He reported to work at 4:30 that afternoon but was excused because of his injuries and arrived home about 5:30 p.m. A police officer came to his home and questioned

him concerning the shooting incident and the fact that his license plate was on the car which left the alley immediately after the shooting. This was the first time he was aware that his license plate was missing. He denied being at the location of the incident, stating that he was at home alone at the time of the shooting.

The Board made findings that plaintiff violated Rule 2, 38 and 39 and ordered that plaintiff be discharged, but the trial court on administrative review held that "the finding of the Police Board was and is against the manifest weight of the evidence."

OPINION

■■ Defendants contend that the court erred in finding the decision of the Board to be against the manifest weight of the evidence. On administrative review, the scope of inquiry is limited to ascertaining whether the agency's finding was contrary to the manifest weight of the evidence. (*Kerr v. Police Board* (1974), 59 Ill. 2d 140, 319 N.E.2d 478.) Preponderance of the evidence is the standard of proof required (*Drezner v. Civil Service Com.* (1947), 398 Ill. 219, 75 N.E.2d 303), and it is particularly within the province of the agency to resolve evidentiary conflicts and to determine the credibility of the witnesses (*Peterson v. Board of Trustees* (1973), 54 Ill. 2d 260, 296 N.E.2d 721).

Here, it is the position of defendants that the decision of the Board was supported by the evidence. Plaintiff maintains, however, that certain of the evidence was improperly admitted, and it will be necessary that we examine his contentions before we resolve the manifest weight question.

First, he asserts that a proper foundation was not established for the admission of the bullet fragments because a continuous chain of their possession was not shown and, as a result, the testimony of Sergeant Smith that the fragments were of a bullet fired from the Smith & Wesson in question was improperly received. After the particles fell from the alley lamp, they were picked up by the two men from the Bureau of Electricity, who handed them to Sergeant Dorff. He then took them to the police crime lab. There, Dorff placed them in a brown envelope, which he sealed and then initialled and dated the envelope flap—following which he placed cellophane tape over the flap. He then gave the sealed envelope to Officer Charnow, a lab technician, who gave him an investory receipt. Sergeant Smith stated that he was given the sealed envelope the next day by Charnow and placed it in an evidence retention drawer, where it remained until opened by him to conduct his analysis, at which time Smith said it showed no signs of tampering.

■■ Plaintiff argues that because there was no direct testimony from Officer Charnow, who accepted the fragments from Dorff, the chain of possession was broken and, as a result, the foundation for the admission

of the documents was insufficient. He cites no supporting authority, and we find that case law is to the contrary. In *People v. Anthony* (1963), 28 Ill. 2d 65, 69, 190 N.E.2d 837, 839, the court rejected a similar contention that a chain of possession was broken because there was no direct testimony from a lab technician who had received the sealed envelope containing narcotics from the arresting officer. The court stated:

> "The record here discloses that the narcotics were taken from the defendant, placed in a sealed envelope and brought by Parker to the crime laboratory. Before delivering the envelope Parker wrote his name on the back flap of the envelope and covered the same with cellophane tape. The chemist who examined the narcotics found the envelope in the same sealed condition with no suggestion of tampering, alteration or substitution. In our opinion the techniques employed were sufficient to make admissible the testimony as to the result of the chemical analysis."

In *People v. Norman* (1962), 24 Ill. 2d 403, 407, 182 N.E.2d 188, 190, *cert. denied* (1962), 371 U.S. 849, 9 L. Ed. 2d 85, 83 S. Ct. 86, where the evidence established that a powder contained in a tinfoil package was turned over to the chemist in an envelope specifically designed to prevent tampering, and although the record did not show the precise whereabouts of the envelope for 11 days, the chemist testified that when he opened it, it showed no signs of tampering and was in the same condition as when it was first delivered to him. The court held "[i]n the absence of any suggestion of substitution, alteration or any other form of tampering, we are of the opinion that the protective techniques employed were sufficient to make admissible the testimony of the chemist as to the result of his qualitative analysis." See also *People v. Appleton* (1971), 1 Ill. App. 3d 9, 272 N.E.2d 397.

Being mindful of the fact that a hearing officer and the Board are not bound by formal rules of evidence (Ill. Rev. Stat. 1973, ch. 24, par. 10—1—18.1) and considering the extent to which defendants established the chain of possession of the bullet fragments and the absence of any claim or suggestion by plaintiff of substitution, alteration or any other form of tampering, we are of the opinion that there was a sufficient foundation established and that the bullet fragments were properly admitted. Second, plaintiff asserts that his signed statement given to Sergeant Dorff was improperly admitted and, further, that he was denied a fair hearing when the hearing officer reserved his ruling on the admissibility of the statement until after plaintiff had testified. The record shows that during his investigation, Dorff took a statement from plaintiff in the presence of his attorney. When it was offered in evidence, plaintiff objected on the ground that "it was not the best evidence" but only "a record of a conversation that should have been established by oral testimony of the

parties to that conversation." We recognize, as plaintiff points out, the crucial nature of the statement, because it contains an admission by plaintiff that he was the owner of the Smith & Wesson handgun which was linked to the shooting incident. We believe, however, that the statement was properly received, as it is clearly an admission of a material fact which, when offered by an opponent as is the case here, is admissible as substantive evidence (*Jones v. DeWig* (1974), 25 Ill. App. 3d 423, 323 N.E.2d 475) and, as such, does not require a preliminary foundation (*Ryan v. McEvoy* (1974), 20 Ill. App. 3d 562, 315 N.E.2d 38).

■■ In view of this holding, we see no merit in plaintiff's additional contention that the delay of the hearing officer in his ruling on the admissibility of the statement was "so fundamentally unfair as to deny due process of law," because "if the statement was not to be admitted there would have been no need for the plaintiff to come forward with evidence since the plaintiff had not established ownership of the firearm through other evidence." Because the statement was admissible, the hearing officer should have received it into evidence when it was offered by defendants and plaintiff, of necessity, would have testified. Thus, the decision delay was not unfair and did not deprive plaintiff of due process. Moreover, when at the close of defendant's case the hearing officer announced he would withhold his ruling, plaintiff did not object nor did he move for a decision as to the admissibility of the statement before testifying.

Finally, plaintiff contends that there was no proof of identification. He admits that a police officer who discharges a firearm into a street lamp would be in violation of Rules 2 and 38 and also Rule 39, if no report was made of the incident. He argues, however, that it was not established by a preponderance of the evidence that he did the shooting.

■■ While no occurrence witness saw plaintiff shoot at the lamp in question, we believe there is sufficient circumstantial evidence to sustain the burden of proof as to that issue. The record shows that the sound of a shot in the alley was heard; that immediately after the shot a man was seen in the alley about to enter a car which had a license number issued to plaintiff; that a bullet hole was later seen in the street lamp in the alley; and that pieces of a bullet fired from a gun owned by defendant were discovered in the street lamp. Against this remarkable coincidence of events, we cannot accept plaintiff's argument that his uncorroborated testimony of being home all evening must be accepted as true. As stated in *People v. Robinson* (1958), 14 Ill. 2d 325, 331, 153 N.E.2d 65, 68, the law makes "no legal distinction between direct and circumstantial evidence as to the weight and effect thereof." Furthermore, the lack of direct identification testimony goes only to the weight that the circumstantial evidence should be given by the administrative agency, a determination

of which is within the province of the agency. *Peterson v. Board of Trustees.*

There remains for our consideration the contention of defendants that the trial court erred in finding that the Board's decision was against the weight of the evidence. In this regard, it is noted that the applicable law is that the findings and conclusions of the Board on questions of fact are prima facie true and correct (Ill. Rev. Stat. 1973, ch. 110, par. 274), and that an administrative finding may not be adjudged against the weight of the evidence unless it appears that the opposite conclusion is clearly evident (*Goslin v. Zoning Board of Appeals* (1976), 40 Ill. App. 3d 40, 351 N.E.2d 299). See also *Bock v. Long* (1972), 3 Ill. App. 3d 691, 279 N.E.2d 464; *Legones v. License Appeal Com.* (1968), 100 Ill. App. 2d 394, 241 N.E.2d 499.

■■ In view of our holdings above, the evidence we will consider on the question of manifest weight is disclosed by the record to be that two witnesses heard the sound of a gunshot in the alley; that one of the witnesses saw a man entering a car in the alley and start to drive away; that the other witness ran after the car and observed the license number, which was later determined to be issued to plaintiff; that what appeared to be a bullet hole was observed in a street lamp in the alley; that metal fragments were recovered from the lamp, which were later found to be pieces of a bullet fired from a handgun owned by plaintiff. Applying the applicable law to this evidence, it is clear to us that a conclusion opposite that of the Board is not clearly evident. (*Goslin; Bock; Legones.*) Accordingly, we hold that the findings of the Board were not against the manifest weight of the evidence, and we reverse the order of the trial court appealed from. This cause is remanded with a direction that the decision of the Board be affirmed.

Reversed and remanded with direction.

LORENZ and WILSON, JJ., concur.