IRVING COTOVSKY, *et al.*, Plaintiffs-Appellees, *v.* THE DEPARTMENT OF REGISTRATION AND EDUCATION, Defendant-Appellant.

First District (4th Division)   No. 81—997

Opinion filed October 14, 1982.—Rehearing denied December 6, 1982.

Tyrone C. Fahner, Attorney General, of Springfield (Charles J. Pesek, Special Assistant Attorney General, of counsel), for appellant.

Klafter, Burke, Keane & Nathan, of Chicago, for appellee Joseph Schreier.

William J. Harte, Ltd., of Chicago (William J. Harte and Maureen Connors, of counsel), for other appellees.

PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

The Department of Registration and Education appeals an order of the trial court setting aside the Department's decision to revoke the pharmacy practice licenses held by Irving Cotovsky, Joseph Schreier and Edward Jung. The Department presents the following issues for review: (1) whether the trial court can set aside the decision of an administrative agency based on a factual argument which was never raised before the agency; (2) whether the finding that Joseph Schreier and Edward Jung dispensed excessive quantities of controlled substances is contrary to the manifest weight of the evidence; and (3) whether it is unconscionably harsh, arbitrary and capricious to revoke the license of a pharmacist found to have dispensed excessive quantities of controlled substances.

We affirm.

In 1976, the Department of Registration and Education (Depart-

ment) filed a complaint against Irving Cotovsky, Joseph Schreier, Edward Jung, Irving's Pharmacy and Irv's No. 2 Pharmacy. Cotovsky owned and operated two pharmacies in Chicago, Illinois. Irving's Pharmacy (Irving's) located at 1346 West Irving Park Road, and Irv's No. 2 Pharmacy (Irv's #2) at 1601 West Montrose Avenue. Cotovsky was a registered pharmacist, and both of his pharmacies held certificates of registration. Jung worked at Irving's, and Schreier worked at Irv's #2. Both Jung and Schreier were registered pharmacists. The Department alleged that between January 1 and June 1, 1976, Cotovsky or someone under his direction and control dispensed from the pharmacies 7,112 prescriptions issued by Dr. Gerald McCabe for controlled substances. The prescriptions were issued at intervals of three, four and seven days for many of the same individuals for whom similar prescriptions were issued previously.

The Department charged that the large amount of controlled substances ordered and dispensed indicated that respondents in the trial court, appellees in the instant case, were jointly and separately guilty of gross immorality; "did not exercise good faith and dispensed *** Controlled Substances for no legitimate medical purpose" but rather to maintain the drug addiction of the recipients of the prescriptions and/or to illicitly divert the controlled substances. The Department alleged that appellees' acts were grounds for revocation or suspension of their certificates of registration under section 7.6 of the Pharmacy Practice Act of the State of Illinois (Ill. Rev. Stat. 1975, ch. 91, par. 55.7—6) and under rules VII and IX(5) of rules and regulations promulgated for the administration of the Act. The Department asked that appellees' certificates be suspended or revoked.

On July 29, 1976, after an *ex parte* hearing, the director of the Department suspended the controlled substances licenses of the pharmacies. Section 305(b) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1975, ch. 56½, par. 1305(b)) provides for suspension pending a formal hearing. On August 10, 1976, the hearing began. The record established that 7,112 prescriptions written by Dr. Gerald McCabe were filled at the two pharmacies from January 1 to June 1, 1976. From these prescriptions, the Department selected prescriptions filled for 10 individuals which were marked as Department's exhibits 8A to 8J. All of the expert testimony offered by the Department and the pharmacies was directed toward the prescriptions written for those 10 individuals.

The Department called as its first witness Lawrence B. Slotnik, its drug compliance coordinator. Slotnik examined the prescriptions and stated that in his opinion they were excessive and not filled in

good faith.

Marvin Graber, a pharmacist, was qualified as an expert witness. When asked what duty is imposed upon a pharmacist to fill a prescription for a controlled substance, Graber stated that the pharmacist should determine the validity of the prescription. According to Graber, a pharmacist could have a duty to refuse to fill a prescription for a controlled substance. Graber reviewed the prescriptions and gave as his opinion that the dosages were excessive.

Sherwood Thomas, a practicing pharmacist, also testified that the prescriptions were excessive. The Department then rested and the defense put on their case.

Norman Farnsworth, a professor of pharmacognosy and head of the Department of Pharmacognosy and Pharmacology at the College of Pharmacy at the University of Illinois, was qualified as an expert witness. He examined the prescriptions and testified that the dosages were not excessive. Other expert witnesses who also testified that the prescriptions were not excessive were Philippe Benoit, a professor of pharmacology at the University of Illinois Medical Center, Leonard C. Arnold, a physician and attorney, and Ralph William Morris, a professor of pharmacology at the University of Illinois, College of Medicine.

Several individuals who filled their prescriptions at Cotovsky's pharmacies testified that they had pathological conditions for which controlled substances were prescribed. These individuals were not those whose prescriptions were examined by the expert witnesses. William Stevens, an accountant, testified that McCabe prescribed morphine sulphate for pain caused by metal fragments in his spine. His wife, also a patient at McCabe's, took morphine sulphate to relieve pain caused by bone infection. Kenneth LeVey, a lawyer, stated that he suffered from rapid heartbeat for which McCabe prescribed quaalude. John Tornabene suffered from emphysema and lung tumors for which McCabe prescribed morphine sulphate. Vito Cancialosi took morphine sulphate to relieve pain caused by automobile accident injuries. Patricia Trapp was paralyzed in her left arm. McCabe prescribed Dilaudid. Some of the patients described the difficulties they had in getting their prescriptions filled.

Following the conclusion of the hearing and upon recommendation of the hearing officer, the director of the Department ordered the revocation of the licenses of the pharmacies to dispense controlled substances. The pharmacies filed suit for administrative review and the trial court upheld the Department's decision. We affirmed in *Irving's Pharmacy v. Department of Registration & Education* (1979), 75 Ill. App. 3d 652, 658, 394 N.E.2d 627, 632, holding that the evidence ad-

duced at the administrative hearing supported the decision of the Department and that its findings were based on substantial evidence in the record and were not against the manifest weight of the evidence.

On November 1, 1976, proceedings against appellees began before the State Board of Pharmacy (Board). It accepted as evidence the transcript of the proceedings before the hearing officer. At a hearing on August 1, 1977, the chairman explained that "the Board would like to have an opportunity to ask questions of additional witnesses in addition to the witnesses that did testify in the previous hearing." The Board wanted testimony from pharmacologists as well as a physician to represent the Board because there was an imbalance in the expertise of the witnesses. The Department had presented pharmacists, whereas appellees had presented pharmacologists. Appellees objected to calling more witnesses.

Earl Frederick Wendell, Jr., a urologist, was qualified as an expert. He described the medication used to treat patients for renal colic. He examined the prescriptions in the Department's exhibits and stated that the dosages were excessive. Michael T. Schaffer, chief toxicologist for the office of the medical examiner for Cook County, was also qualified as an expert. He described the factors which affected dosage. After examining the prescriptions on exhibit, he stated that the dosages were excessive. None of the individual respondents testified at the administrative hearings.

On September 12, 1977, the Board found that Cotovsky, Jung and Schreier and/or someone under the direction and control of Cotovsky filled 7,112 prescriptions at intervals of three, four and seven days for many of the same individuals for whom prescriptions were issued previously. The Board also found as follows:

"[I]t is apparent from the evidence that the inordinately large amount of Controlled Substances dispensed during the aforementioned short period of time by Respondent Pharmacists and Respondent Pharmacies that Respondents jointly and separately, did not exercise good faith in dispensing and filling the aforementioned prescriptions and dispensed the aforementioned Controlled Substances for no legitimate medical purpose but rather for the purpose of maintaining the addiction of drugs of those individuals for whom Respondents filled said prescriptions and/or for the illicit diversion of the aforementioned Controlled Substances, or for some other non-medical reason."

The Board concluded that Cotovsky, Jung, Schreier, Irving's and Irv's #2 jointly and separately violated section 7.6 of the Pharmacy Practice Act (Ill. Rev. Stat. 1975, ch. 91, par. 55.7—6) and rules VII

and IX(5) of the rules and regulations promulgated for the administration of the Act. The Board recommended that licenses issued to Cotovsky, Jung and Schreier be revoked and pharmacy licenses issued to Irving's and Irv's #2 be suspended for 30 days.

Appellees' petition for rehearing was denied. On January 18, 1978, they filed a complaint for judicial review of the administrative decision. On August 28, 1980, the trial court confirmed the Department's order revoking the licenses. Eventually, it stayed the order of revocation. On April 13, 1981, the trial court, upon reconsideration, set aside the revocation of the licenses of Schreier and Jung, ordered a modification of the penalty against Cotovsky and confirmed as to the pharmacies. The court explained its decision as follows:

"[T]he Court cannot see a record absent some evidence *** of conspiracy that would make Joseph Schreier and Edward Jung responsible for the conduct of the other parties, and since the finding of facts indicates that they were responsible, and the basis of their finding of gross immorality is based on the acts of others, this Court *** feels that on the motion for reconsideration that it must reverse the order of the Department of Registration and Education in revoking their individual licenses.

With respect to Irving Cotovsky *** it seems to the Court that he was *** responsible, and that the administrative agency could properly infer that Irving Cotovsky was responsible for the acts of the other parties, and since there was evidence *** of *** the selling of excessive amounts of controlled substances supported by the testimony of experts, so that insofar as Irving Cotovsky and Irving's Pharmacy and Irv's No. 2 Pharmacy is concerned, this Court feels it must affirm the decision of the Department of Registration and Education.

However, with respect to Irving Cotovsky, the Court feels also that inasmuch as the agency found that the Irving's Pharmacy and Irv's No. 2 Pharmacy are concerned, the two were only entitled to a suspension of thirty days, and the Department revoked *** Irving Cotovsky's license, and this Court feels that is arbitrary conduct, because the Court cannot and does not feel that based on this record that Irving Cotovsky could be held more accountable than the drug stores which actually employed all three pharmacists.

So with respect to him individually, since it is the province of the agency rather than this Court to determine the suspension of anyone, in a case where the Court finds arbitrary actions in imposing a penalty, the only thing that a Court can do is re-

mand the matter back to the agency for the imposition of a proper penalty based upon the penalty already imposed ***."

In its order, the court confirmed the decision of the Department with respect to the pharmacies; it confirmed the finding of gross immorality with respect to Cotovsky, but remanded the matter to the agency for the imposition of an appropriate suspension, and set aside the Department's order revoking the licenses of Schreier and Jung. The Department appeals.

The Department argues that the trial court improperly based its decision on an issue never raised before the administrative agency. At the administrative hearing, Jung and Schreier never contended they were not proved individually responsible for dispensing the controlled substances, although, appellant contends, they had ample opportunity to assert this defense. Therefore, the failure to raise the issue constituted a waiver. The Department further argues that the trial court erroneously concluded that Jung and Schreier were not individually responsible for the inordinate quantities of controlled substances dispensed.

We disagree. Even assuming the waiver rule might apply in this case, the rule is not absolute. (See *Hux v. Raben* (1967), 38 Ill. 2d 223, 230 N.E.2d 831.) The familiar standard for administrative hearings is that the decision of the agency will not be set aside unless it is contrary to the manifest weight of the evidence. (*Eastman Kodak Co. v. Fair Employment Practices Com.* (1981), 86 Ill. 2d 60, 76, 426 N.E.2d 877, 884.) In the findings of fact, the Board used the disjunctive "or" as well as the conjunctive "and" to describe the conduct of the pharmacists. It stated:

21. That from January 1, 1976 through February 1, 1976, Respondent Cotovsky and/or Respondent Jung and/or someone under Respondent Cotovsky's direction and control dispensed from Respondent Pharmacy Number One approximately the following amounts of Controlled Substances ***.

22. That from January 1, 1976 through February 1, 1976, Respondent Cotovsky and/or Respondent Schreier dispensed from Respondent Pharmacy Number Two approximately the following amount of Controlled Substances ***.

23. That Respondent Cotovsky and/or Schreier and/or Jung and/or someone under the direction and control of Respondent Cotovsky filled approximately 660 prescriptions at Respondent Pharmacy Number One and Number Two during the time period set forth below ***.

24. That a review of these prescriptions indicate that Respondents Cotovsky, Jung and Schreier and/or someone under the direction and control of Respondent Cotovsky filled the aforementioned 7,112 prescriptions \*\*\*."

■ We have examined the record in this case. The focus of the Department's argument at the administrative hearings was that excessive amounts of controlled substances were dispensed from the two pharmacies. The Department did not establish what amounts of drugs were dispensed by the pharmacists individually, but merely inferred that because of the large amounts dispensed Schreier and Jung must have known the prescriptions were excessive. The Board concluded in its findings that the pharmacists were jointly and separately guilty of gross immorality because they did not exercise good faith in dispensing and filling the prescriptions. In our opinion, the finding that excessive amounts of controlled substances were dispensed from the two pharmacies is insufficient by itself to establish that Schreier and Jung were individually responsible for dispensing those excessive amounts. Therefore, we hold that the trial court properly set aside the order of the Department which revoked the licenses of Schreier and Jung.

Finally, the Department argues that the trial court improperly interfered with its authority to revoke the license of a pharmacist found guilty of gross immorality. The trial court found that Cotovsky was responsible for selling excessive amounts of controlled substances; but, that court found the revocation of Cotovsky's pharmacy practice license an arbitrary sanction compared to the sanction invoked against the two pharmacies—30-day suspensions. The trial court remanded to the Department the determination of a more appropriate sanction against Cotovsky.

■ Illinois courts will not interfere with the discretionary authority vested in administrative bodies unless such authority is exercised in an arbitrary or capricious manner or the administrative order is against the manifest weight of the evidence. (*People ex rel. Stephens v. Collins* (1966), 35 Ill. 2d 499, 500, 221 N.E.2d 254, 255.) However, Illinois courts have overturned sanctions imposed by administrative agencies which were overly harsh in view of mitigating circumstances. *Citrano v. Department of Registration & Education* (1980), 90 Ill. App. 3d 937, 940, 414 N.E.2d 74, 77; *Cartwright v. Illinois Civil Service Com.* (1980), 80 Ill. App. 3d 787, 793, 400 N.E.2d 581, 586; *Kelsey-Hayes Co. v. Howlett* (1978), 64 Ill. App. 3d 14, 17, 380 N.E.2d 999, 1002.

■ We agree with the trial court that the sanction of revocation applied to Cotovsky was arbitrary compared with the sanction of sus-

pension applied to the pharmacies. We hold that the trial court acted properly in setting aside the revocation of Cotovsky's license and remanding the matter to the Department for a determination of a proper suspension.

For the foregoing reasons, the decision of the circuit court of Cook County is affirmed.

Affirmed.

LINN and ROMITI, JJ., concur.