BENNY R. FELICIANO, Plaintiff-Appellant, *v.* THE ILLINOIS RACING BOARD *et al.*, Defendants-Appellees.

First District (2d Division) No. 82—190

Opinion filed November 30, 1982.—Rehearing denied December 14, 1982.

Richard G. Schoenstadt and Michael A. Moses, both of Siegel, Denberg, Vanasco, Shukovsky, Moses & Schoenstadt, of Chicago, and Richard G. White, of Washington, D. C., for appellant.

Tyrone C. Fahner, Attorney General, of Springfield (Kathryn A. Spalding, Assistant Attorney General, of counsel), for appellees.

JUSTICE DOWNING delivered the opinion of the court:

Benny R. Feliciano, plaintiff, a professional jockey, filed a complaint for administrative review asking the circuit court to reverse a decision of the Illinois Racing Board (Board). The circuit court affirmed the decision of the Board, which found that plaintiff was in knowing possession of an illegal device in violation of the Illinois Horse Racing Act of 1975 (Act). (Ill. Rev. Stat. 1981, ch. 8, par. 37—37(a)(3).)[1] Plaintiff appeals the circuit court's affirmation of the Board's decision and the penalty imposed.

Plaintiff's license was suspended for life after the Board found that plaintiff's knowing possession of an illegal device was shown by a preponderance of the evidence. Such devices, known as buzzers or batteries, are electrical devices used to stimulate race horses. Section 37(c) of the Act empowers the Board to suspend or revoke such a violator's license.

Agents of the Illinois Department of Law Enforcement (DLE) testified that an anonymous phone call was received by Commander Leonard Becicka on June 15, 1981, stating that plaintiff had used a "battery" in a race the previous week at Arlington Park Race Track

---

[1]The pertinent part of the Act provides:
 "(a) It shall be unlawful for any person:
 * * *
 (3) to have in his possession within the confines of a race track, stables, sheds, buildings or grounds, or within the confines of a stable, shed, building or ground where horses are kept which are eligible to race over a race track of any racing association or licensee, any appliance other than the ordinary whip or spur which may or can be used for the purpose of stimulating or depressing a horse or affecting its speed at any time; * * *." Ill. Rev. Stat. 1981, ch. 8, par. 37—37(a)(3).

(Arlington) in Arlington Heights, Illinois. The anonymous caller did not indicate where the battery could be found. Commander Becicka then ordered the search of plaintiff and his car during the normal training hours the next morning. Commander Becicka decided against searching the plaintiff at the start of the races on June 15 in order to avoid unnecessary speculation by, or inconvenience to, the racing public. DLE Agents Gentilcore, Billone and Kahn arrived at Arlington about 6 a.m. on June 16 to search plaintiff and his car. The agents located plaintiff's car outside the track cafeteria and took up surveillance positions. Agent Gentilcore stated that the locking mechanism on each door of plaintiff's car was in the locked position as he passed the car. Later evidence showed that the locking mechanism of the car was in the arm rest of each door rather than at window level. Agents Kahn and Gentilcore testified that plaintiff appeared to reach into his front pants pocket, then reach for the car door, twist his hand and enter the car. Agent Billone could only see plaintiff enter the car and drive off. The agents followed plaintiff. Agent Billone stopped plaintiff, identified himself and asked to search plaintiff and his car. Plaintiff cooperated with the agents and pulled his car to a vacant area. Plaintiff signed a consent-to-search form and unlocked the front passenger-side door for Agent Gentilcore. Three racing gloves, which plaintiff admitted owning, were found in the glove compartment. Agent Gentilcore found a "battery" in the thumb of one of the racing gloves. Plaintiff denied any knowledge of, or the ownership of, the battery. Plaintiff was placed under arrest and advised of his constitutional rights. The racing stewards were notified of plaintiff's arrest.

During hearings held by the Board, plaintiff disagreed with the agents' accounts of the events of June 16, 1981. Agents Gentilcore and Kahn had stated that they observed plaintiff talking to a blond woman as he left the track cafeteria. Plaintiff denied talking to anyone as he left the cafeteria. Plaintiff further denied that he reached into his pants pocket and unlocked the car, maintaining that the car was not locked. He denied consenting to a search of his car or signing a consent-to-search form. Plaintiff denied that he unlocked the passenger-side door for Agent Gentilcore, again stating that the car was unlocked. Plaintiff stated that his car was unlocked and unattended during training hours on June 15 and during the times his wife used the car for local errands. Plaintiff's wife testified that she could not recall if the car was locked at all times while she used it.

The Board rejected plaintiff's theory that the device was "planted" in his car by someone jealous of plaintiff and to prevent his continued racing. The Board, finding his testimony to be unbelievable,

held that plaintiff had violated the Act by his knowing possession of the device. Plaintiff was suspended for life and excluded from all race tracks in Illinois.

Plaintiff filed a timely complaint for administrative review by the circuit court of Cook County (Ill. Rev. Stat. 1981, ch. 110, par. 3—101 *et seq.*). The circuit court affirmed the Board's decision as not contrary to the manifest weight of the evidence.

# I

## STANDARD OF PROOF

Plaintiff argues that the alleged violation of section 37(a)(3) of the Act must be shown by clear and convincing evidence and not by a mere preponderance of the evidence. Plaintiff contends that the more stringent standard of proof is required where, as here, the alleged conduct could subject the accused to both civil and criminal penalties.[2]

In order to evaluate properly this issue, we first review some general principles applicable to this subject. The standard of proof which should be applied in a particular type of adjudication by the fact finder must take into account the private interest affected by the proceeding in relation to the governmental interest, and the permanency of the threatened loss by the governmental action. As the private interest intensifies, the standard to apply should become more stringent. In *Santosky v. Kramer* (1982), ___ U.S. ___, 71 L. Ed. 2d 599, 102 S. Ct. 1388, the Supreme Court found that a clear and convincing standard was required in a proceeding to terminate parental rights since "the private interest affected is commanding; the risk of error from using a preponderance standard is substantial; and the countervailing governmental interest favoring that standard is comparatively slight." (___ U.S. ___, ___, 71 L. Ed. 2d 599, 609, 102 S. Ct. 1388, 1396.) The primary purpose of assigning a particular standard of proof to an adjudicatory proceeding is to minimize the risk of erroneous decisions. (*Santosky v. Kramer* (1982), ___ U.S. ___, ___, 71 L. Ed. 2d 599, 607, 102 S. Ct. 1388, 1395.) Depending on the interests involved in a particular case, "[t]he individual should not be asked to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the state." *Addington v. Texas* (1979), 441 U.S. 418, 427, 60 L. Ed. 2d 323, 331-32, 99 S. Ct. 1804, 1810.

---

[2]For the criminal penalty, see section 37(c) of the Act (Ill. Rev. Stat. 1981, ch. 8, par. 37—37(c)).

*Addington* involved the indefinite, involuntary commitment of plaintiff to a State mental hospital. The court found that the unique nature of civil commitment proceedings, in which the certainty of psychiatric diagnosis is impossible and where the individual's liberty interest far outweighs the interest of the State, requires a standard of proof short of proof beyond a reasonable doubt and more stringent than a mere preponderance of the evidence. The court left the determination of the precise burden to the Texas Supreme Court, noting that the equivalent of a clear and convincing standard would satisfy the due process requirements in a civil commitment proceeding. 441 U.S. 418, 433, 60 L. Ed. 2d 323, 335, 99 S. Ct. 1804, 1813.

The Illinois legislature and the courts have recognized the greater individual interest involved in civil commitment proceedings requiring proof by clear and convincing evidence. (Ill. Rev. Stat. 1981, ch. 91½, par. 3—808; *People v. Nayder* (1982), 106 Ill. App. 3d 489, 495, 435 N.E.2d 1317, where the court recognized the need for a more stringent standard of proof at civil commitment proceedings to protect the individual's liberty interest in light of the unique nature of the evidence and the uncertainty of an evidentiary determination, when balanced against the State's interest in protecting the individual from himself and society from dangerous persons.) The standard of proof should be of a higher quality when "the possible injury to the individual [loss of liberty] is significantly greater than any possible harm to the state." *Addington v. Texas* (1979), 441 U.S. 418, 427, 60 L. Ed. 2d 323, 331-32, 99 S. Ct. 1804, 1810.

■ An examination of the interests involved here shows that the needs of the State outweigh the interests of the plaintiff. Plaintiff is a licensed jockey. A license issued to a jockey by the Board allows the jockey to engage in his vocation within the race tracks of Illinois. The issuance of the license confers a right which does not exist without it, " 'and it may be to regulate and control the occupation or privilege for which the license is granted, so as to subserve the public good or prevent its being conducted in a manner injurious to the public welfare ***. ***' " (*Cox v. National Jockey Club* (1974), 25 Ill. App. 3d 160, 164, 323 N.E.2d 104, quoting 53 C.J.S. *Licenses* sec. 2 (1948).) Information required on applications for such a license and the procedure for the issuance of a jockey license (Ill. Rev. Stat. 1981, ch. 8, par. 37—15) indicate that the primary purpose of the licensing procedure is "to regulate and control the occupation of a jockey and to insure that the occupation is not engaged in by those who would practice it in a manner injurious to horse racing and the public welfare." (*Cox v. National Jockey Club* (1974), 25 Ill. App. 3d 160, 164.) The li-

censing procedure evidences the interest of the State to protect the public from licensees who seek to use their license for personal gain rather than for the public good.

The statutory scheme does not ignore the substantial interest a licensee has in the continued ability to pursue his livelihood. In many cases, the license represents the only livelihood of the licensee. However, the public interest in preserving the integrity and honesty of horse racing outweighs the pecuniary interest of the licensee. (*Kurtzworth v. Illinois Racing Board* (1981), 92 Ill. App. 3d 564, 589, 415 N.E.2d 1290, *appeal denied* (1981), 85 Ill. 2d 565.) The protection of economic interests does not require a standard of proof as demanding as the protection of a more fundamental right, such as individual liberty or parental rights. *Santosky v. Kramer* (1982), ____ U.S. ____, 71 L. Ed. 2d 599, 102 S. Ct. 1388; *Addington v. Texas* (1979), 441 U.S. 418, 427, 60 L. Ed. 2d 323, 331-32, 99 S. Ct. 1804, 1810; *Stanley v. Illinois* (1972), 405 U.S. 645, 651, 31 L. Ed. 2d 551, 558, 92 S. Ct. 1208, 1212-13.

Plaintiff's argument that a more stringent standard of proof is required when both civil and criminal penalties could result from a violation of the Act is not supported by a majority of Illinois authority. In *Drezner v. Civil Service Com.* (1947), 398 Ill. 219, 75 N.E.2d 303, cited as supportive authority for plaintiff's argument, the supreme court found that the order and recommendation of the administrative hearing board was contrary to the manifest weight of the evidence. In *Drezner,* a field investigator for the Liquor Control Commission was dismissed for bribery and solicitation. The supreme court concluded that the decision of the hearing board was contrary to the manifest weight of the evidence. Addressing itself to the standard of proof required in a civil proceeding where conduct constituting a crime is charged, the supreme court said:

"[T]he charges in cases of this kind need be proved by only a preponderance of the evidence and need not be proved beyond a reasonable doubt. *Sundquist v. Hardward Mutual Fire Ins. Co.,* 371 Ill. 360 [where the reasonable doubt standard was abandoned].

\*\*\* While we adopt and hold that the charge [civil] need only be proved by a preponderance of the evidence \*\*\* we believe that the evidence of guilt [criminal] should be clear and convincing." 398 Ill. 219, 227.

The *Drezner* opinion has been cited often as establishing a preponderance of the evidence standard in civil proceedings, even where criminal conduct is involved. (*Barr Rubber Products Co. v. Sun Rub-*

*ber Co.* (2d Cir. 1970), 425 F.2d 1114, 1120, *cert. denied* (1970), 400 U.S. 878, 27 L. Ed. 2d 115, 91 S. Ct. 118; *Lazarus v. Pascucci* (1979), 74 Ill. App. 3d 633, 640, 393 N.E.2d 1074; *Ritenour v. Police Board* (1977), 53 Ill. App. 3d 877, 880, 369 N.E.2d 135, *appeal denied* (1978), 67 Ill. 2d 595.) Other Illinois courts faced with cases where both civil and criminal penalties could result have treated such violations like every other fact in issue and have required only that the violation be shown by a preponderance of the evidence. In *Board of Education v. Adelman* (1981), 97 Ill. App. 3d 530, 532, 423 N.E.2d 254, *appeal denied* (1981), 85 Ill. 2d 563, the second district of our court made a thorough and well-reasoned analysis of the many cases involving the quantum of proof necessary in administrative review cases when the conduct might also constitute a criminal offense. That court concluded that as to the administrative review proceeding, proof by a preponderance of the evidence is sufficient. We agree.

The Board properly applied a preponderance of the evidence standard in this matter, finding that plaintiff had knowingly violated the Act.

## II

### MANIFEST WEIGHT OF THE EVIDENCE

■ Plaintiff next argues that regardless of which standard is appropriately applied to this case, the decision of the Board and the affirmation of that decision by the circuit court is contrary to the manifest weight of the evidence. We cannot agree.

"Under the Administrative Review Act the permissible scope of judicial inquiry concerning factual determinations by administrative agencies has been limited to ascertaining if the agency decision was contrary to the manifest weight of the evidence." (*Basketfield v. Police Board* (1974), 56 Ill. 2d 351, 358, 307 N.E.2d 371.) Courts will not hesitate to grant relief from an adverse agency decision if that decision is not supported in the record by sufficient evidence. *Basketfield v. Police Board* (1974), 56 Ill. 2d 351, 359.

Plaintiff contends that the record is devoid of any evidence to support the Board's decision. Plaintiff argues that there was no evidence to show that he had any knowledge of the illegal device. Plaintiff further contends that the record does not support a finding that he possessed the device, even though it was in his car.

Whether there is possession and whether there is knowledge are questions of fact to be determined by the trier of fact. (*People v. Ortiz* (1980), 91 Ill. App. 3d 466, 471, 414 N.E.2d 1072, *appeal denied*

(1981), 83 Ill. 2d 573.) The findings and conclusions of an administrative agency regarding questions of fact are to be considered *prima facie* true and correct. *Douglas v. Daniels* (1978), 64 Ill. App. 3d 1022, 1028, 382 N.E.2d 90.

Here the Board found the evidence sufficient to conclude that plaintiff knowingly possessed the illegal device in violation of the Act. The Board reached its decision based primarily upon its assessment of the credibility of the witnesses. Plaintiff continually argues that the possibility of a "set-up" refutes the evidence of his possession. However, the Board found that nothing more than speculative statements by plaintiff were offered to show a "set-up." The possibility of access to plaintiff's car by others, absent more supportive evidence, is not sufficient to defeat the fact of actual possession established in the record. (*People v. Ortiz* (1980), 91 Ill. App. 3d 466, 472.)[3] Although testimony of the plaintiff's witnesses differed from the testimony of the Board's witnesses, "[t]he assessment of the credibility of the witnesses is a matter for the trier of fact who observed their demeanor [citations], and to view such an assessment as erroneous there must be something more than the mere existence of conflicting testimony." (*Douglas v. Daniels* (1978), 64 Ill. App. 3d 1022, 1028.) From our review of the record, it cannot be said that the Board's findings are contrary to the manifest weight of the evidence. The circuit court properly affirmed the Board's decision.

## III

### LIFE SUSPENSION

Finally, plaintiff argues that the circuit court erred and its decision should be reversed because the Board abused its discretion by imposing a life suspension of plaintiff's license as a penalty for the violation. Again, we cannot agree.[4]

---

[3]Plaintiff accused the Board of acting as a prosecutor rather than a fact finder in this matter, by not acting further on the "set-up" theory. However, the record shows that the Board acted properly, giving plaintiff ample opportunity to present any evidence of a "set-up." No such evidence was offered.

[4]Plaintiff argues that the lifetime suspension effectively precludes him from racing in every State in this country. Although plaintiff fails to offer any authority to support this statement, our research reveals that other States (*e.g.*, Cal. Bus. & Prof. Code sec. 19460 (West 1959); Fla. Stat. Ann. sec. 550.10(4)(b) (West 1972); N.Y. Unconsol. Laws sec. 8040—b(2) (McKinney 1979)) may, in the discretion of the licensing authority, prevent a person from being licensed in their State for various undesirable activities in other jurisdictions.

■ A court of review may overturn sanctions imposed by an agency which are overly harsh in view of mitigating circumstances. (*Cotovsky v. Department of Registration & Education* (1982), 110 Ill. App. 3d 417, 424, 442 N.E.2d 520, 525.) The question is not whether a court of review would decide upon a more lenient sanction were it to determine initially what discipline would be appropriate. (*Sutton v. Civil Service Com.* (1982), 91 Ill. 2d 404, 411, 438 N.E.2d 147.) "The question is whether, in view of the circumstances presented, this court can say that the [agency], in opting for [the particular penalty], acted unreasonably or arbitrarily or selected a type of discipline unrelated to the needs of the [agency]." 91 Ill. 2d 404, 411.

As stated previously in this opinion, plaintiff's pecuniary interest, although it may amount to his entire livelihood, is created by statutory authority (Ill. Rev. Stat. 1981, ch. 8, par. 37—1 *et seq.*), and granted through the discretion of the Board (Ill. Rev. Stat. 1981, ch. 8, par. 37—15). The plaintiff is entitled to maintain his licensee status provided he continues to comply with the rules and regulations adopted by the Board pursuant to its rule-making power. Ill. Rev. Stat. 1981, ch. 8, par. 37—2.

The fact that plaintiff possessed property rights created by statute does not mean that those rights cannot be affected by further governmental action. Here, the State has a compelling interest in licensing those who would participate in horse racing in this State. The most compelling task facing the Board is the continued preservation of the integrity and honesty of horse racing in this State. (*Kurtzworth v. Illinois Racing Board* (1981), 92 Ill. App. 3d 564, 589, 415 N.E.2d 1290.) Attempts to predetermine the outcome of a race are an ever-present and persistent part of horse racing. It is necessary that the Board and its agents be empowered with the authority to rid the profession it regulates of any undesirable elements upon proof of such unworthiness. *Kurtzworth v. Illinois Racing Board* (1981), 92 Ill. App. 3d 564, 589.

■ Here the Board determined that plaintiff knowingly violated a rule designed to prevent dishonest racing. Plaintiff argues that the punishment imposed for this violation is justified only where there is actual possession of the illegal device or where there is flagrant and repeated use of such a device. Plaintiff relies upon *Byrne v. Stern* (1981), 103 Ill. App. 3d 601, 431 N.E.2d 1073, as authority for the reduction of the agency penalty imposed by a court of review. In *Stern*, the court found that the evidence was insufficient in light of mitigating circumstances, including the lack of actual knowledge of any wrongdoing by the licensee, to support the revocation of petitioner's

liquor license. Petitioner's employee was found to have been soliciting an act of prostitution in the licensed premises. 103 Ill. App. 3d 601, 606-07.

Plaintiff's reliance on *Stern* is misplaced. Here, the Board found that plaintiff was in knowing possession of the illegal device. There was no showing of mitigating circumstances. The life suspension imposed was not arbitrary, unreasonable or unrelated to the goals of the Board. (*Sutton v. Civil Service Com.* (1982), 91 Ill. 2d 404, 411.) The circuit court properly affirmed the Board's determination and the penalty imposed.

For the reasons set forth herein, the judgment of the circuit court of Cook County is hereby affirmed.

Affirmed.

STAMOS, P.J., and HARTMAN, J., concur.