STEVEN A. MARTZ, Plaintiff-Appellee, v. ILLINOIS RACING BOARD, Defendant-Appellant.

Fifth District   No. 5—94—0078

Opinion filed September 8, 1995.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Barbara E. Pitts, Assistant Attorney General, of counsel), for appellant.

Mark C. Goldenberg and Elizabeth V. Heller, both of Bono, Goldenberg, Hopkins & Bilbrey, P.C., of Granite City, for appellee.

JUSTICE RARICK delivered the opinion of the court:

The Illinois Racing Board (Board) appeals from the judgment of the circuit court of Madison County reversing the Board's denial of the 1991 application to be licensed as a harness driver in Illinois submitted by plaintiff, Steven Martz. The Board contends that the circuit court erred in concluding that the Board's denial was contrary to the manifest weight of the evidence. We agree and reverse the decision of the circuit court.

On November 20, 1991, Martz applied for licensure as a harness driver in Illinois. The stewards at Maywood Park Race Track denied Martz's application based on his history of racing violations during his career. This history included a criminal misdemeanor conviction in Kentucky in 1971 for accepting a bribe to affect the outcome of a race in which Martz was driving the favorite. As a result of that conviction, Martz's Kentucky racing license was indefinitely suspended. Martz, however, did regain his license several years later. Also as part of his racing history, Martz had some 59 disciplinary rulings against him between the years 1974 and 1986. Of these 59 rulings, 25 were for driving violations consisting of kicking, failing to keep pace, and impeding other horses. Most of the remaining rulings involved the use of illegal drugs in connection with certain horses.

Martz had previously applied for licensure in Illinois in 1978 and 1990. The 1978 application was withdrawn because Martz was on a probationary license in Kentucky and his Illinois application necessarily would be denied. The 1990 license was denied based on the misdemeanor conviction and the disciplinary rulings. According to the Board at that time: "Rather than leading an exemplary career after being relicensed following the 1971 revocation, Martz has done nothing in his racing career but engage in conduct resulting in numerous violations, suspensions and fines." The Board reiterated its assessment of Martz's career in its denial of Martz's 1991 application.

The circuit court of Madison County, in reversing the denial of Martz's 1991 application, concluded that the Board's findings were against the manifest weight of the evidence. The court specifically

found that the Board's ruling that Martz failed to show compelling evidence of his rehabilitation constituted "sweeping generalizations" unsupported by the evidence. Interestingly, the court made no reference to the Board's ruling on Martz's 1991 application but did discuss the denial of the 1990 application. The court reversed the Board's decision and remanded the matter back to the Board. We note that there is some question as to whether Martz sought review of the 1990 denial. We, however, find no evidence in the record of any disposition of the matter, assuming review was sought.

We initially must comment on the Board's interpretation of the court's order of reversal. The Board contends that the court reviewed only the denial of the 1990 application. Although the court did specifically refer to the 1990 decision in its order, we do not believe that the court failed to consider the denial of the 1991 application. In any event, the Board is correct that the propriety of the 1990 denial was not at issue here. The 1990 denial was a final administrative decision, and the circuit court lacked jurisdiction to review it. (See *Siciliano v. Illinois Racing Board* (1994), 264 Ill. App. 3d 1085, 1087-88, 637 N.E.2d 612, 614-15.) We therefore address only the merits of the denial of Martz's 1991 application.

Pursuant to the Administrative Review Law (735 ILCS 5/3—110 (1994)), findings and conclusions of an administrative agency are held to be *prima facie* true and correct. (*Coleman v. Illinois Racing Board* (1988), 124 Ill. 2d 218, 221, 529 N.E.2d 520, 522; *Board of Trustees v. Knight* (1987), 163 Ill. App. 3d 289, 291, 516 N.E.2d 991, 993.) It is not the function of a court on review to reweigh the evidence or make an independent determination of the facts; the court's function is to ascertain whether the findings and decision of the agency are against the manifest weight of the evidence. (*Abrahamson v. Illinois Department of Professional Regulation* (1992), 153 Ill. 2d 76, 88, 606 N.E.2d 1111, 1117.) A decision is contrary to the manifest weight of the evidence only when, after viewing the evidence in a light most favorable to the agency, the court determines that no rational trier of fact could have agreed with the agency's decision. (*Board of Trustees*, 163 Ill. App. 3d at 291, 516 N.E.2d at 993.) In other words, an administrative decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. (*Abrahamson*, 153 Ill. 2d at 88, 606 N.E.2d at 1117.) The mere fact that an opposite conclusion is reasonable or that the reviewing court might have ruled differently will not justify reversal of the administrative findings. The reviewing court may not substitute its judgment for that of the administrative agency. (*Abrahamson*, 153 Ill. 2d at 88, 606 N.E.2d at 1117.) If the record contains evidence to support the agency decision, it should be

affirmed. (*Abrahamson*, 153 Ill. 2d at 88, 606 N.E.2d at 1117.) Here, the record contains ample evidence to support the Board's decision; the trial court erred in concluding otherwise.

First and foremost, the record reveals that Martz was convicted of a criminal misdemeanor in 1971 for affecting the outcome of a race. As a result of this conviction, Martz's license in Kentucky was indefinitely suspended, and he was denied USTA membership in Ohio. Second, Martz has received at least 59 disciplinary rulings against him between 1974 and 1986, resulting in frequent suspensions from racing in other States. Many of the violations were for kicking, failing to keep pace, and impeding other horses or involved the use of illegal drugs in connection with his horses. Finally, the Board also determined that Martz's explanation for the bribery incident and resulting conviction was not credible. Assessment of the credibility of a witness is a matter for the Board, the trier of fact who observed the witness' demeanor. *Feliciano v. Illinois Racing Board* (1982), 110 Ill. App. 3d 997, 1004, 443 N.E.2d 261, 267.

The Illinois Racing Board and stewards are charged by law with regulating horse racing in Illinois. (*Kurtzworth v. Illinois Racing Board* (1981), 92 Ill. App. 3d 564, 566, 415 N.E.2d 1290, 1292.) They have the difficult task of overseeing and regulating horse and harness racing to the end that races are conducted with honesty and integrity. (*Kurtzworth*, 92 Ill. App. 3d at 589, 415 N.E.2d at 1308.) The issuance of a license to race in Illinois confers a right which does not exist without it. (*Feliciano*, 110 Ill. App. 3d at 1001, 443 N.E.2d at 265.) The licensing procedure evidences the interest of the State to protect the public from licensees who seek to use their license for personal gain rather than for public good. (*Feliciano*, 110 Ill. App. 3d at 1001-02, 443 N.E.2d at 265.) As a result, the public interest in preserving the integrity and honesty of horse racing outweighs the pecuniary interest of the licensee. (*Feliciano*, 110 Ill. App. 3d at 1002, 443 N.E.2d at 265.) Consequently, "[t]he Board may in its discretion refuse an occupation license to any person: *** who has been found guilty of a violation of this Act or of the rules and regulations of the Board" (230 ILCS 5/15(c)(4) (West 1994)) or to any person who has been convicted of a crime including a misdemeanor (230 ILCS 5/15(c)(1) (West 1994); 11 Ill. Adm. Code §§ 502.60(a), (b) (1992)). By refusing to accept such evidence, the circuit court, in this instance, intruded into the authority of the Board to preserve the integrity and honesty of horse racing in Illinois and to rid the profession of any undesirable elements upon proof of such unworthiness. (*Feliciano*, 110 Ill. App. 3d at 1005, 443 N.E.2d at 267-68.) The proof, despite its age, existed. Accordingly, the court erred in reversing the

decision of the Board to deny Martz a license to harness race in Illinois.

For the aforementioned reasons, we reverse the judgment of the circuit court of Madison County and reinstate the decision of the Illinois Racing Board to deny plaintiff a license to be a harness driver in the State of Illinois.

Reversed.

WELCH and CHAPMAN, JJ., concur.