JERRY GRAHAM, *et al.*, Plaintiffs-Appellees, Cross-Appellants, v. THE ILLINOIS RACING BOARD, Defendant-Appellant, Cross-Appellee.

First District (1st Division)   No. 85—0326

Opinion filed June 9, 1986.

Neil F. Hartigan, Attorney General, of Springfield (Jill Wine-Banks, Solicitor General, and Kathryn A. Spalding, Assistant Attorney General, of Chicago, of counsel), for appellant.

Kenneth R. Siegan and Keith M. Kanter, both of Chicago, for appellees.

JUSTICE CAMPBELL delivered the opinion of the court:

This is an appeal from an order of the circuit court of Cook County affirming in part and modifying in part a decision of defendant, the Illinois Racing Board (the Board), that found plaintiffs guilty of violating harness Rule 21.19 (Rule 21.19) which requires every owner, trainer, groom or caretaker to guard each horse owned, trained, or attended by him in a manner to prevent anyone from administering illegal chemical substances to his horses. As a result of its findings, the Board suspended for life the occupation license of plaintiff, Jerry Graham, owner/trainer; declared Graham ineligible for future licensing; and permanently excluded Graham from all race tracks under the Board's jurisdiction. Plaintiffs then filed an action in the circuit court for administrative review of the court's order. Following a hearing, the circuit court affirmed the Board's findings and reduced the penalty imposed of Graham. The Board appeals the circuit court's

modification of the penalty and plaintiffs cross-appeal the circuit court's affirmance of the Board's findings.

The issues presented for review are: (1) whether the circuit court erred when it failed to find that the Board's alleged violation of its own rules and the prosecution of plaintiffs under those rules was arbitrary, capricious, unreasonable, and a denial of due process; (2) whether the circuit court erred when it failed to find Rule 21.19 unconstitutional; (3) whether the circuit court erred when it failed to find that the Board's findings of fact were against the manifest weight of the evidence; (4) whether the Board's penalty was unreasonable and arbitrary; and (5) whether the circuit court erred in modifying the sanctions imposed by the Board. For the following reasons, we affirm the judgment of the circuit court; vacate the penalties imposed by the Board and the court; and remand the cause to the Board for imposition of a penalty consistent with the views expressed herein.

The record presents the following facts pertinent to this appeal. Plaintiff, Jerry Graham, has owned, trained and raced standardbred horses since 1960. The remaining plaintiffs have ownership interests in the horses which are the subject of this action. During the summer of 1978, Graham brought several horses to Sportsman's Park Race Track (the track) to compete in various races. The horses were lodged in barn K at the track and were the sole responsibility of caretakers, grooms, trainers and other helpers employed by plaintiffs.

Between July 20 and September 19, 1978, five horses owned by plaintiffs raced and either won or placed in 10 parimutuel races at the track. Pursuant to track procedure, a urine sample was collected by track personnel from the top horses in each race for analysis to determine the presence of any illegal drugs. It is undisputed that analysis of the urine samples taken from plaintiffs' five horses after the 10 races in question revealed the presence of the drug, desproprionyl fentanyl, commonly known as sublimaze. It has been stipulated that the administration of sublimaze to a horse participating in a race would be a violation of the rules and regulations of harness racing.

Based upon the urine test results, charges were brought against all plaintiffs as owners, and specifically against Graham, as owner and trainer. On October 21, 1980, the track stewards held a hearing on the charges and determined that Graham had failed to "guard or cause to be guarded" the horses in question in violation of Rule 21.19. As a result, the stewards ordered the return of all purses; imposed a fine of $7,500; suspended Graham's occupation license for the remainder of 1980; recommended that Graham not be eligible for a Board

license until January 1, 1984; and denied Graham the privileges of all race tracks under the Board's jurisdiction during the suspension period.

Graham appealed the stewards' ruling to the Board which, in turn, affirmed the ruling and imposed a harsher penalty upon Graham. In addition to a return of the purses and the fine, Graham's occupation license was suspended for life; he was declared permanently ineligible to apply for a license; and he was excluded from all race tracks under the Board's jurisdiction for life.

Plaintiffs then filed an action seeking administrative review of the Board's findings and conclusions, and relief from the penalties imposed. Following extensive hearings, the circuit court affirmed the Board's findings and modified the penalty on the grounds that the Board's penalty was overly harsh, unreasonable and unjustified. In reaching its decision, the court stated:

"The Board was justifiably outraged at the drugging, but in my opinion was overly influenced by the fact that drugging was involved when they penalized Jerry Graham for failure to employ guards.

\* \* \*

[T]he life sentence was too harsh and unjustified, especially in light of the fact that his record was clean for twenty seven years, I think that sentence was improper."

The court's modified penalty suspended Graham's occupation license as trainer and owner for one year; suspended his occupation license as a driver for six months; and excluded him from all race tracks for six months. Defendant's appeal and plaintiffs' cross-appeal followed.

In the interests of sequential clarity, we will first address the issues raised on cross-appeal. Initially, plaintiffs contend that the circuit court erred in failing to find that the Board's alleged violations of its own rules and the prosecution of plaintiffs under those rules was arbitrary, capricious, unreasonable, and a denial of due process. Specifically, plaintiffs allege that: (1) the Board is precluded from enforcing Rule 21.19 against them because, at the time in question, the Board itself violated the rules which govern the guarding of the urine-collection process; and (2) the urine catchers violated rules which prohibit them from betting on races with which they are involved.

In support of their contention that, based upon the aforesaid allegations, the Board's prosecution was arbitrary, capricious and unreasonable, plaintiffs rely on *Heavner v. Illinois Racing Board* (1982), 103 Ill. App. 3d 1020, 432 N.E.2d 290. In *Heavner*, the race track stewards withheld the second place purse from plaintiff, a horse

owner, on the ground that, in violation of Rule 12.21, no entry ticket for plaintiff's horse had been found in the entry box for the race in which plaintiff's horse had finished second. Plaintiff alleged that his trainer had properly entered the horse and requested a hearing before the Board. At the hearing, plaintiff alleged, *inter alia*, that the Board had waived strict compliance with Rule 12.21 because the stewards had violated the same rule by their failure to be present when the entry box was opened. Without making any findings as to the alleged violations by the stewards, the Board upheld the stewards' decision. The circuit court reversed the Board's decision, holding that the Board's failure to make any specific findings concerning the violations of its own rules was "arbitrary, capricious and unreasonable and an abuse of its discretion." On appeal, the appellate court affirmed the circuit court on the ground that "the question of entry was the whole question at issue" and the Board could not enforce part of the rule governing the entry process and ignore the other part.

■ We find *Heavner* distinguishable from the present case and unpersuasive of plaintiffs' position. As stated, in *Heavner*, the stewards violated the same rule that the horse owner was accused of violating. As a result, the enforcement of the rule by the Board against one violator and not the other was clearly arbitrary, capricious and manifestly prejudicial to plaintiff. By contrast, in the present case the alleged rule violations by the Board govern the urine collection process and not the guarding of the horses. Although the charge against plaintiffs is predicated upon the discovery of drugs in the urine samples of the horses, there is no issue regarding tampering of the samples before this court. Instead, the issue is whether plaintiffs properly guarded their horses so as to prevent someone from drugging the horses. As stated by the *Heavner* court, "A violation of administrative rules which does not prejudice the plaintiff and has no effect on the issues involved may be disregarded." (*Heavner v. Illinois Racing Board* (1982), 103 Ill. App. 3d 1020, 1026, 432 N.E.2d 290.) Therefore, because the validity of the urine samples is not at issue, it is our opinion that whether the Board violated the rules governing the urine-collection process or whether the urine catchers violated the betting rules is irrelevant to the issue before this court.

■ With respect to plaintiffs' contention that the Board's enforcement of Rule 21.19 against them constitutes a denial of due process, we find Graham v. Illinois Racing Board, No. 80—1960 (7th Cir. 1982) (unpublished opinion) is *res judicata* of the issue. In *Graham*, a case arising out of the same facts before this court, plaintiff alleged that the Board, in authorizing and conducting hearings regarding sus-

pension or revocation of trainers' licenses when it had violated two of its own published rules regarding the collection and guarding of urine specimens taken from horses, denied him the right to equal protection and due process. The court of appeals held that the fact that the Board's failure to have guards posted during the urine-collection process did not "render the specimen evidence so inherently unreliable that admission could be considered a violation of due process." In our opinion, the doctrine of *res judicata* bars plaintiffs' relitigation of the same claim. See *Allen v. McCurry* (1980), 449 U.S. 90, 66 L. Ed. 2d 308, 101 S. Ct. 441.

■■ Finally, with respect to the alleged betting-rules violations by the urine catchers, the circuit court noted that the Board had weighed the credibility of the urine catchers and had found that the integrity of the urine-collection process had not been violated. From our review of the record, we concur with the circuit court that it cannot be said that the Board's findings were contrary to the weight of the evidence. Thus, we find that the circuit court properly affirmed the Board's findings regarding the alleged rule violations.

■■ Next, plaintiffs contend that the Board has unconstitutionally and unreasonably interpreted and applied Rule 21.19 so as to create an irrebuttable presumption that when a post-race urine sample discloses the presence of a prohibited foreign substance in a horse, the trainer has failed to comply with Rule 21.19. Plaintiffs claim that this application of Rule 21.19 renders those that care for horses absolute insurers of the horses, regardless of fault or negligence.

Recently, this court addressed the identical issue in *Ray v. Illinois Racing Board* (1983), 113 Ill. App. 3d 510, 447 N.E.2d 886, and held that Rule 21.19 was constitutional. In reaching its decision, the *Ray* court stated:

> "The rule at issue in this case creates no irrebuttable presumption; it describes the action that must be taken by one who is responsible for guarding a race horse. If the owner, trainer, groom, or caretaker were able to demonstrate that he had guarded his horse as required by the rule, he could avoid liability for the misdeeds of another ***.
>
> *** [T]he rule in question *** is reasonable, it is designed to protect the public against fraud, and it creates no irrebuttable presumption of culpability ***." (*Ray v. Illinois Racing Board* (1983), 113 Ill. App. 3d 510, 516, 447 N.E.2d 886.)

We concur with the *Ray* court's analysis and find it directly applicable to the facts of the present case and, thus, dispositive of the issue.

■■ Plaintiffs next contend that the Board's finding that plaintiffs

violated Rule 21.19 is contrary to the manifest weight of the evidence. Plaintiffs argue that the Board offered no evidence to contradict the testimony of Graham's grooms and his trainer who praised the manner in which Graham protected and cared for his horses and testified "that there was virtually 'always' somebody there with those horses."

Pursuant to Illinois law, the findings and conclusions of an administrative agency on questions of fact are to be considered "prima facie true and correct." (Ill. Rev. Stat. 1985, ch. 110, par. 3—110; *Feliciano v. Illinois Racing Board* (1982), 110 Ill. App. 3d 997, 443 N.E.2d 261.) Accordingly, courts of review are limited to a determination of whether the findings are contrary to the manifest weight of the evidence. (*Strickland v. Department of Registration & Education* (1978), 60 Ill. App. 3d 1, 376 N.E.2d 255.) In reaching this determination, it is not the reviewing court's function to reweigh the evidence or to redetermine the credibility of the witnesses. (*Knop v. Department of Registration & Education* (1981), 96 Ill. App. 3d 1067, 421 N.E.2d 1091.) Rather, the reviewing court is to determine whether reasonable and unbiased persons, acting within the limits proscribed by law and drawing all inferences in favor of the findings, would find that the evidence supports the findings. *Daniels v. Police Board* (1976), 37 Ill. App. 3d 1018, 349 N.E.2d 504.

In the present case, the three grooms who had been responsible for plaintiffs' horses on the dates in question testified that no specific instructions regarding guarding were ever given to them. Although the grooms testified that there was always someone in the barn, these statements were mere assumptions rather than based upon actual knowledge. Further, in contradiction to these statements, the grooms admitted that the horses were routinely left unguarded for several hours in the early morning. In light of the evidence presented, we conclude that the Board's finding that plaintiffs violated Rule 21.19 was not contrary to the manifest weight of the evidence.

■ Next, the Board contends that the circuit court erred in finding that the penalties imposed by the Board were overly harsh, and that the court had no authority to impose a new penalty. Pursuant to the Illinois Horse Racing Act of 1975 (Ill. Rev. Stat. 1985, ch. 8, par. 37—1 *et seq.*), the Board has the authority to suspend or revoke any occupation license for the violation of any of the Board's rules or regulations (Ill. Rev. Stat. 1985, ch. 8, par. 37—15(d)(2)). All findings and actions of the Board are final, subject to administrative review under section 46 of the Act (Ill. Rev. Stat. 1985, ch. 8, par. 37—16(k)). Upon review, the court may overturn sanctions imposed by the Board which are found to be overly harsh in view of mitigating circumstances. In

reaching this decision, the appropriate query is whether the Board acted unreasonably and arbitrarily. *Sutton v. Civil Service Com.* (1982), 91 Ill. 2d 404, 438 N.E.2d 147; *Feliciano v. Illinois Racing Board* (1982), 110 Ill. App. 3d 997, 443 N.E.2d 261.

Recently, in *Kline v. Illinois Racing Board* (1984), 127 Ill. App. 3d 702, 469 N.E.2d 667, and *Ray v. Illinois Racing Board* (1983), 113 Ill. App. 3d 510, 447 N.E.2d 886, this court addressed fact situations similar to the one at bar. In both *Kline* and *Ray*, drugs were found in the urine of two horses and the owners were subsequently found to have violated Rule 21.19. As in the present case, neither owner was found guilty of having drugged the horses. In *Kline*, the Board suspended plaintiff's occupation license for two concurrent 90-day periods. In *Ray*, plaintiff's occupation license was suspended for 270 days.

■ In light of these two recent cases, we concur with the circuit court's determination that the Board's penalty of lifetime suspension imposed upon Graham for the same violation is unduly harsh and arbitrary. In imposing its sentence, the Board stated that it found the fact that there had been five horses drugged in 10 races to be an aggravating factor. While the increased number of horses may be an aggravating factor worthy of a stronger penalty than those imposed in *Kline* and *Ray*, it is our view that a lifetime suspension constitutes an unreasonable extreme. Those cases in which lifetime suspensions have been upheld involved plaintiffs found to be in actual possession of illegal buzzers which were used to electrically stimulate the horses. (*Belville v. Illinois Racing Board* (1984), 129 Ill. App. 3d 970, 473 N.E.2d 500; *Feliciano v. Illinois Racing Board* (1982), 110 Ill. App. 3d 997, 443 N.E.2d 261.) In the present case, it is undisputed that Graham was not found guilty of either possessing illegal drugs or of injecting drugs into the horses.

■ Moreover, in reviewing penalties, courts generally consider mitigating circumstances such as professional skills and good reputation. (*Citrano v. Department of Registration & Education* (1980), 90 Ill. App. 3d 937, 414 N.E.2d 74.) In the present case, plaintiff had worked as an owner, trainer and driver for over 20 years and had an unblemished record. Accordingly, we concur with the circuit court's finding that the penalty imposed by the Board was unduly harsh. However, in reaching this decision, we also find that the determination of the appropriate period of suspension is one more properly reserved for the Board (90 Ill. App. 3d 937, 414 N.E.2d 74), and should not have been made by the circuit court.

For the aforementioned reasons, we affirm the judgment of the circuit court; vacate the penalties imposed by the Board and the cir-

cuit court; and remand the cause to the Board for the imposition of a penalty consistent with the views expressed herein.

Affirmed in part; vacated in part; and remanded with instructions.

BUCKLEY and O'CONNOR, JJ., concur.