ROGER W. EDWARDS, Petitioner-Appellant, v. THE ILLINOIS RACING BOARD, Respondent-Appellee.

First District (1st Division)   No. 1—88—2198

Opinion filed August 7, 1989.

Edward R. Vrdolyak, Ltd., of Chicago (Elizabeth A. Karkula, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Diane Curry Grapsas, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

This is an appeal by plaintiff, Roger W. Edwards, from the suspension of his occupational license by the Illinois Racing Board. We affirm.

Plaintiff has been licensed since 1981 by the Illinois Racing Board as a driver, trainer and owner of harness horses. On May 17, 1984,

the stewards at Balmoral Park Race Track issued a ruling summarily excluding him from any race meeting held within the jurisdiction of the Illinois Racing Board (the Board) subject to a subsequent hearing by the stewards. This ruling was predicated upon results from six separate laboratory tests which indicated the presence of illegal drugs in four horses trained by Edwards.

After plaintiff was excluded, he was advised that a hearing would be held once the Board's lab completed testing on other urine samples from horses trained by plaintiff. Following the completion of the testing, plaintiff was advised that eight additional instances of illegal drugs had been found in horses he trained.

A hearing on the 14 laboratory reports was held on July 17, 1984. Edwards and his attorney were present at the hearing, but plaintiff offered no evidence in rebuttal. On July 18, 1984, the stewards issued a ruling finding that plaintiff had violated Illinois Racing Board Rules C9.6, C9.7 and C9.20 and suspending his license and track privileges for life.

On July 23, 1984, plaintiff timely filed an appeal of the stewards' ruling. Although plaintiff had a right to a hearing within seven days, he sought a continuance for the purpose of having independent tests performed on the blood and urine samples. In May, June and December of 1985, Edwards' counsel advised counsel for the Board that Edwards was considering withdrawing his request for a hearing. On March 13, 1986, the Board's counsel filed a motion to dismiss based on Edwards' failure to actively pursue his case. On April 8, 1986, plaintiff responded that he wished to proceed and a hearing was set for April 23, 1986.

The April 23 hearing was cancelled by the Board due to the resignation of the Board's attorney and reset by agreement of the parties for June 26, 1986. Pursuant to Illinois Racing Board Rule A4.11, a stipulation of facts was agreed to. At the hearing on June 26 a dispute arose over the Board's attempt to supplement the record with scientific data regarding the drugs found in the course of testing. The matter was taken under advisement by the hearing officer, who set a new hearing date of September 11, 1986. At the September 11 hearing, Edwards withdrew his agreement on the stipulation.

Between November 1986 and September 1987, the parties continued negotiations in an attempt to reach an agreement on the stipulation of facts. An agreement was reached and a hearing was held on September 2, 1987. The stipulation of facts was entered into evidence. In the stipulation, the parties agreed that the samples taken from the horses in question and the Board's laboratory tests were accurate and

that the urine samples of the horses contained one of three drugs, either Sulindac, Isopyrin or Etorphine. Edwards failed to provide any evidence that he had guarded the horses in question as required by Board Rule C9.20.

On October 27, 1987, the Board entered an order finding that plaintiff had violated Rule C9.20 on 14 occasions and suspending his license for nine months for each of the 14 violations, to run consecutively with credit for time served. The Board set February 21, 1995, as the termination date for plaintiff's suspension.

On December 1, 1987, plaintiff filed a complaint for administrative review in the circuit court of Cook County. On June 22, 1988, a hearing was held and the trial court entered an order affirming the decision of the Illinois Racing Board. This appeal followed.

Plaintiff's first contention is that the hearing on the original six laboratory findings was held more than 60 days after the exclusion and the violation of his right to a prompt hearing denied his right to procedural due process.

While a license to pursue one's occupation as a trainer of harness racers is a property interest protected by the due process clause (*Barry v. Barchi* (1979), 443 U.S. 55, 64, 61 L. Ed. 2d 365, 375, 99 S. Ct. 2642, 2649), this argument was never made before the Board and therefore need not be considered here (*E & E Hauling, Inc. v. Pollution Control Board* (1985), 107 Ill. 2d 33, 38-39, 481 N.E.2d 664; *Rackow v. Human Rights Comm'n* (1987), 152 Ill. App. 3d 1046, 1064, 504 N.E.2d 1344). We have reviewed plaintiff's claim, however, and find that it lacks merit.

First, we note that following his summary exclusion, plaintiff stipulated to the following facts:

> "When the Stewards excluded Edwards in May of 1984, they were aware, and so advised Edwards, that a Stewards' inquiry would be conducted once the Board laboratory had completed testing more urine samples of the horses trained by Edwards. Edwards did not and does not challenge the propriety of his summary exclusion by the stewards."

The Illinois Horse Racing Act of 1975 (the Act) (Ill. Rev. Stat. 1987, ch. 8, par. 37—1 *et seq.*) permits stewards to summarily exclude persons for just cause subject to a subsequent hearing by the Board as to the propriety of the exclusion. Summary suspension under section 9(e) of the Act has been upheld against a due process challenge based on the State's interest in preserving the integrity of horse racing and because Rules A4.02A and C give the affected party a right to a prompt hearing. (See *Phillips v. Graham* (1981), 86 Ill. 2d 274, 282, 427

N.E.2d 550; *Kurtzworth v. Illinois Racing Board* (1981), 92 Ill. App. 3d 564, 589, 415 N.E.2d 1290.) Our supreme court held in *Phillips* that summary exclusion of a license prior to an evidentiary hearing does not constitute a violation of a trainer's due process rights provided that the licensee is ultimately given an adequate opportunity for judicial determination of the matter. *Phillips*, 86 Ill. 2d at 286.

Rule A4.02 of the Board's hearing rules provides:

> "(C) Appeals from orders of the stewards or judges suspending an occupation license or from orders of the organization licensee (race track) ejecting or excluding an occupation licensee shall be instituted by filing a written request for a hearing no later than five days after receipt of notice of the suspension, ejection or exclusion has been communicated to the licensee. The Board will conduct its hearing within seven days after such request has been received by the Board unless the licensee requests a postponement for good cause."

There is no evidence that plaintiff exercised his right to a prompt hearing on the summary exclusion pursuant to Rule A4.02. Moreover, as the trial court pointed out, at the July 18, 1984, stewards' hearing, plaintiff had the opportunity to present evidence to rebut the inference of a rule violation and, on the advice of counsel, he declined to do so. Thus we conclude plaintiff was not denied his right to procedural due process with respect to the first six violations.

Plaintiff also claims that a due process violation arose out of the Board's failure to reset a hearing date within seven days of the cancellation of the initial hearing, which had been scheduled for April 23, 1986. Plaintiff refers to the period between April 23, 1986, and September 11, 1986, during which period no hearing was held and argues that the continuance between September 11, 1986, and September 2, 1987, constituted a vexatious delay. This argument also has no merit.

■ While plaintiff's appeal of the July 18, 1984, suspension was timely filed on July 23, 1984, the record supports the Board's contention that he waived his right to a hearing within seven days by requesting a continuance for the purpose of conducting independent tests on the 14 urine samples. Moreover, there is no absolute right to a hearing within the statutory time frame. Where a delay is attributable to the party seeking the hearing, there is no violation of the timely hearing requirement. (See, *e.g., Perez v. Civil Service Comm'n* (1987), 153 Ill. App. 3d 176, 180-81, 505 N.E.2d 1067; *Holliday v. Civil Service Comm'n* (1984), 121 Ill. App. 3d 763, 768-69, 460 N.E.2d 358.) The Board has the authority to grant a continuance provided there is good cause for the delay and the time period is reasonable.

(*Ragano v. Illinois Civil Service Comm'n* (1980), 80 Ill. App. 3d 523, 528, 400 N.E.2d 97.) Here the majority of the continuances or delays were attributable to the plaintiff and the one delay caused by the Board was for good cause.

According to the record, after the plaintiff requested the initial delay for purposes of independently testing the urine samples, his counsel and the Board engaged in lengthy negotiations regarding the stipulation, after which a hearing was scheduled for April 23, 1986. On April 22, 1986, the Board attorney who was handling the case resigned and the hearing was cancelled. The Board sought a continuance in order to give its new general counsel an opportunity to prepare for the hearing. The parties, in fact, agreed to a new hearing date of June 26, 1986.

At the June 26, 1986, hearing, the hearing officer took certain matters under advisement and set a new hearing for September 11, 1986. At that hearing, plaintiff's counsel withdrew his agreement to the stipulation, requiring another period of negotiation between the parties. Insofar as plaintiff or his counsel never requested that the matter be set for hearing, much of the delay was attributable to plaintiff and plaintiff was given an adequate opportunity for "ultimate judicial determination" of the matter (*Mitchell v. W. T. Grant Co.* (1974), 416 U.S. 600, 611, 40 L. Ed. 2d 406, 416, 94 S. Ct. 1895, 1902, quoting *Phillips v. Commissioner* (1931), 283 U.S. 589, 596-97, 75 L. Ed. 2d 1289, 1297, 51 S. Ct. 608, 611), we find that plaintiff's right to procedural due process was not violated by the proceedings here.

Plaintiff next contends that the findings and conclusions of the Illinois Racing Board were against the manifest weight of the evidence and therefore the judgment of the trial court, affirming the Board's decision to suspend his license, should be reversed or in the alternative, remanded for a lesser sentence.

■ The Administrative Review Law provides that findings and conclusions of an administrative agency on questions of fact are to be considered *prima facie* true and correct. (Ill. Rev. Stat. 1987, ch. 110, par. 3—110; *Murdy v. Edgar* (1984), 103 Ill. 2d 384, 391, 469 N.E.2d 1085.) On appeal, a court will not interfere with the decision of an administrative agency unless its decision is contrary to the manifest weight of the evidence or unless its authority is exercised in an arbitrary and capricious manner. *Coleman v. Illinois Racing Board* (1988), 124 Ill. 2d 218, 221, 529 N.E.2d 520.

■ The Illinois Board suspended plaintiff's license for failing to guard his horses in violation of Board Rule C9.20 (11 Ill. Adm. Code §509.200 (1985)), after laboratory reports on urine samples from

horses trained by plaintiff revealed 14 incidents involving illegal drugs. The guarding rule is designed to protect the public from fraud in the horse racing industry and merely describes the action that a party who is responsible for guarding a race horse must take. See *Ray v. Illinois Racing Board* (1983), 113 Ill. App. 3d 510, 516, 447 N.E.2d 886.

Board Rule C9.21, entitled "Prima Facie Evidence," states that if a horse is determined to be carrying a foreign substance, it is *prima facie* evidence that the trainer has violated either the rule prohibiting unlawful administration of a foreign substance or the guarding rule and the trainer then "has the burden of going forward with evidence." (11 Ill. Adm. Code §509.210 (1985); *Kline v. Illinois Racing Board* (1984), 127 Ill. App. 3d 702, 469 N.E.2d 667.) The *prima facie* evidence standard for guarding rules was upheld in *Barry v. Barchi* (1979), 443 U.S. 55, 63-66, 61 L. Ed. 2d 365, 374-76, 99 S. Ct. 2642, 2648-50.

Here, plaintiff entered into a stipulation stating that the samples tested were taken from the horses in question, that the reports were accurate and that the 14 samples contained illegal substances. Plaintiff has never disputed these facts and he failed to present any evidence that he guarded the horses in question. Under these circumstances plaintiff's contention that the Board's findings were against the manifest weight of the evidence and that the trial court erred in affirming the Board's ruling is not persuasive.

Plaintiff also argues that the sanction imposed was arbitrary and capricious and should be reversed. He claims that the penalty of nine months' suspension for each of the 14 violations, to run consecutively, violates established standards for violation of the guarding rule as set forth in *Graham v. Illinois Racing Board* (1986), 145 Ill. App. 3d 383, 495 N.E.2d 1013. Plaintiff points out that in *Graham*, this court vacated a lifetime license suspension as unduly harsh and arbitrary where the Board had imposed the suspension based on a finding that five of the plaintiff's horses had been drugged in 10 races.

■ Plaintiff correctly states that a reviewing court may overturn sanctions imposed by an agency which are overly harsh in view of mitigating circumstances. (*Feliciano v. Illinois Racing Board* (1982), 110 Ill. App. 3d 997, 1005, 443 N.E.2d 261.) The test, however, is not whether this court would impose a lesser penalty if it were making a decision in the first instance (*Sutton v. Civil Service Comm'n* (1982), 91 Ill. 2d 404, 411, 438 N.E.2d 147); rather, the test is whether, in view of the circumstances, the agency acted unreasonably or arbitrarily (*Sutton*, 91 Ill. 2d at 411; *Graham v. Illinois Racing Board* (1986),

145 Ill. App. 3d 383, 389-90, 495 N.E.2d 1013).

■■ The Board's rules regarding appropriate penalties for violations of Rule C9.20 (the guarding rule) require the Board to consider several factors when imposing penalties, among them: (1) what action, if any, was taken by the trainer to guard the horse during the 24 hours prior to the race; (2) what action, if any, was taken to guard the horse during the 48 hours prior to the race; (3) the nature of the foreign substance found in the horse; (4) the accessibility of the drug; and (5) the trainer's age and experience. 11 Ill. Adm. Code §509.250 (1985).

Plaintiff presented no evidence that he guarded or attempted to guard any of the horses that tested positive for foreign substances. The substances found in plaintiff's horses were not approved for therapeutic use on horses or were not readily available in this country. The drugs found in the post-race samples were Isopyrin, Sulindac and Etorphine. Isopyrin is an analgesic, anti-pyretic and anti-inflammatory drug not approved by the U.S. Food and Drug Administration (FDA) and not commercially available in this country. Sulindac is a non-steroidal, anti-inflammatory drug which is an active ingredient in the drug Clinoril, a drug approved by the FDA for use on humans but not on horses. Etorphine is a morphine-like agent that is a central nervous system stimulant. It is a controlled substance and Class 2 narcotic which may only be purchased and possessed by a licensed physician or veterinarian. It is used primarily as a tranquilizer for large animals and has no accepted therapeutic use for race horses.

The Board also considered that plaintiff had a great deal of experience and had been the subject of a medication ruling in Canada in 1981 and Kentucky in 1982. Additionally, in the period between 1974 and 1984, plaintiff had been fined 14 times and suspended 12 times for various infractions and his membership in horse racing associations had been denied five times.

The cases relied on by plaintiff in arguing that the sanction imposed by the Board is too severe are distinguishable from the instant case. In *Graham v. Illinois Racing Board* (1986), 145 Ill. App. 3d 383, 495 N.E.2d 1013, the court held that a lifetime suspension, return of the purses and a $7,500 fine was an unduly harsh penalty in a failure to guard case where only five horses were involved and the plaintiff had a 27-year unblemished record in racing. The plaintiff in *Kline v. Illinois Racing Board* (1984), 127 Ill. App. 3d 702, 469 N.E.2d 667, was found to have violated the guarding rule and the rule prohibiting a horse from carrying a foreign substance in its body during a race on two occasions. As a consequence, his occupation license

was suspended for two concurrent 90-day periods and he forfeited the purse money. In *Ray v. Illinois Racing Board* (1983), 113 Ill. App. 3d 510, 449 N.E.2d 886, the plaintiff was given a 270-day suspension, 90 days each for three violations of the guarding rule in addition to which he was fined $6,000 and required to forfeit the purse money.

In contrast to the above-cited cases, plaintiff here was not fined, the purses were not forfeited, 14 horses were in issue, plaintiff was not given a lifetime suspension and plaintiff had previously violated numerous racing rules.

While nine months per violation to run consecutively is undoubtedly an onerous penalty, in light of plaintiff's previous record, the number of violations in a six-month period, plaintiff's failure to present any evidence that the horses in issue were guarded and the complete lack of any mitigating circumstances, we conclude that the sanctions imposed were not unreasonable or arbitrary. *Feliciano v. Illinois Racing Board* (1982), 110 Ill. App. 3d 997, 1005, 443 N.E.2d 261; *cf. Graham v. Illinois Racing Board* (1986), 145 Ill. App. 3d 383, 390, 495 N.E.2d 1013.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

Affirmed.

MANNING, P.J., and CAMPBELL, J., concur.