SECOND DIVISION

JUNE 26, 2001

No. 1-98-1749

PETER NOEL HICKEY, ) Appeal from the 

) Circuit Court of

    Plaintiff-Appellant and Cross-Appellee, ) Cook County

) 

v. ) 

) 

RENE RIERA, JR., PETER F. GACICIA,    )

State Stewards, and PETER KOSIBA ) 

Association Steward, in Their Individual ) 

and Official Capacities, ILLINOIS RACING   ) 

BOARD, GENE LAMB, JOSEPH H. DIPIETRO,       )

RALPH M. GONZALEZ, WILLIAM E. JACKSON, ) No. 97 CH 3309

JOSEPH F. KINDLON, LOUIS E. O'SULLIVAN,    )

JOHN B. SIMON, JAMES M. KANE, ) 

LORNA E. PROPES, GARY STARKMAN, and    )

RICHARD BALOG, Members of the Illinois )

Racing Board, in Their Individual and       )

Official Capacities, and    )

JOSEPH SINOPOLI, Executive Director of      ) 

the Illinois Racing Board, in His )

Individual and Official Capacity, ) The Honorable

) Ellis E. Reid, 

    Defendants-Appellees and Cross-Appellants.   ) Judge Presiding.

OPINION MODIFIED UPON DENIAL OF REHEARING

JUSTICE COUSINS delivered the opinion of the court:

The Illinois Racing Board (Board) suspended Peter Noel Hickey's occupational license for one year after six of his horses tested positive for a prohibited substance in their systems.  In May 1998, the circuit court of Cook County reversed and remanded the decision of the Illinois Racing Board.  Plaintiff now raises the following issues upon appeal:  (1) whether the Board had jurisdiction or authority to enter its March 11, 1997, order; (2) whether the Board abused its discretion and violated his due process rights when it found him in violation of Board rules and by suspending his occupational license; (3) whether the Board acted in an arbitrary and capricious manner and violated the plaintiff's due process rights by violating the Illinois Administrative Procedure Act (5 ILCS 100/1-1 
et
 
seq
. (West 1996)) and the Illinois register when it failed to immediately report a positive finding on "World Class Splash"; (4) whether the Board acted in an arbitrary and capricious manner since it failed to follow its own rules and customs; (5) whether defendants acted in an arbitrary and capricious manner and in violation of the plaintiff's constitutional rights in suspending his occupational license since the Board's rules are vague, ambiguous, and lack specific penalties; and (6) whether the Board arbitrarily and capriciously abused its discretion in relying on matters that were not part of the record and in doubling the penalty imposed by the stewards.  Furthermore, plaintiff, in his appellate brief, speculates that because the trial court remanded this cause to the Board to impose a different penalty against him, this court lacks jurisdiction over this matter.  

The Board cross-appeals seeking reversal of the trial court's remand.  The Board contends:  (1) it had jurisdiction to issue its March 11, 1997, order; (2) its hearing procedures comport with due process; (3) the Board did not violate plaintiff's due process rights by failing to notify him earlier that albuterol was detected in one of his horses; (4) the Illinois Horse Racing Act of 1975 (230 ILCS 5/1 
et
 
seq
. (West 1996)) and the Board's rules are not unconstitutionally vague; and (5) the circuit court erred by reversing the Board's sanction when that sanction was not against the manifest weight of the evidence.

BACKGROUND

Plaintiff has been an owner and trainer of Thoroughbred horses for approximately 30 years and is licensed by the Board.  Prior to his suspension, plaintiff was the owner and trainer of the following horses in the following races:  World Class Splash, winner, eighth race, July 21, 1994; Golden Gear, winner, fifth race, July 30, 1994; Little May, winner, eighth race, August 4, 1994; Bantan, winner, ninth race, August 12, 1994; Mucho Miel, third-place finisher, tenth race, August 14, 1994; and Classic Fit, winner, first race, August 28, 1994.

 In July 1994, an initial test indicated that post-race urine samples taken from horses that raced on July 21, 1994, contained some type of bronchodilator.  The director of the Board laboratory, Shelley Kalita, explained that between 1991 and 1994, the lab could detect bronchodilators, but could not confirm the presence of albuterol.  As a result, the lab began developing new techniques to resolve the problem.  By August 18, 1994, staff chemists achieved a technique that isolated albuterol from other substances in the urine.  Albuterol is a bronchodilator which is prohibited by the Board and the Food and Drug Administration (FDA) for treating horses.

Plaintiff was notified of four bronchodilator results in late August 1994.  At the conclusion of a September 1994 initial hearing with stipulated evidence and testimony, the Board's stewards found that all six of plaintiff's horses had raced with albuterol in their systems, in violation of Board rules.  Plaintiff's license was suspended and he was excluded from all facilities under the control of the Board for 180 days.  

On September 27, 1994, a hearing was conducted before a Board-appointed hearing officer.  Plaintiff limited the scope of his hearing to the duration of the penalty imposed upon him by the stewards.  Plaintiff was called by the Board as an adverse witness.  Plaintiff testified that, in February 1994, he met a man named Dale Smallwood at a horse auction.  While Smallwood had purchased some horses from plaintiff previously, plaintiff asserted that he did not know anything about Smallwood's background.  Smallwood claimed to have a supplement that would strengthen the capillaries and veins of Hickey's horses who were bleeders.  Plaintiff asked Smallwood if he could obtain some of the supplement.  Approximately six weeks after their meeting, Smallwood delivered two unlabeled containers, about a quarter of a gallon each, of a white, sugary powder to plaintiff.  Plaintiff paid $1,000 for this substance.  Smallwood instructed plaintiff to put a small scoop of the substance in the horses' night feed.  Plaintiff did not test the substance at that time, but he did taste it.

Plaintiff distributed the substance to eight of his horses on a regular basis, six of which were the horses that tested positive for albuterol after racing.  Plaintiff further testified that he ran out of the additive in mid- or late July, but did not try to obtain more because he felt it was not effective.  Plaintiff testified that albuterol, when given to a horse suffering from an inhibited pulmonary system, would enhance the horse's performance.  Plaintiff maintained that he did not know that the substance he was administering to his horses contained albuterol.  

Plaintiff further testified that he contacted Dr. Fleming in Florida, who already possessed a sample of the powder, "a couple of days after" he received "notification from the stewards" (late August 1994) that they came up with four bronchodilator positives in the urine samples from his horses.  Dr. Fleming had treated plaintiff's horses previously and took a sample of the powder to Florida before the stewards' inquiry to have it analyzed because "she thought it was a product sold for much less money at a health store."  After plaintiff's request, Dr. Fleming forwarded the substance via Federal Express to a California lab for testing. In a letter dated September 1, 1994, the California lab indicated that the sample arrived on August 31, 1994, and was found to contain albuterol.  Plaintiff testified that those results were sent to the stewards. 

Dr. Ronald Jensen, a veterinarian for the Board, was called by plaintiff's attorney.  Dr. Jensen testified that bleeding in horses is a respiratory disease and that the only medication that is allowed to be present in the post-race urine samples of bleeder-horses in Illinois is Lasix.  He also testified that albuterol was not approved for use in horses by the FDA or the state veterinarians and that it is "considered by the ARCI, uniform guidelines on medication classes, as having the ability to affect the performance of a horse." 

Dr. Vincent Brencick, a veterinarian for Arlington Park racetrack, was also called to testify by the plaintiff's attorney.  Dr. Brencick testified that albuterol would not prevent bleeding but could "be of some benefit" to bleeding horses.  He also testified that it is a Board rule that drugs not approved by the FDA for horses must be approved by the state veterinarian for therapeutic use.  Dr. Brencick opined that albuterol should not have any effect on the performance of a horse.  Following the testimony, the Board entered into evidence the Association of Racing Commissioners International Drug Testing Program Guidelines (ARCI or Guidelines), which listed albuterol as a class 3 drug.  

At the close of testimony during the October 1994 hearing, hearing officer Tighe stated:

   "In this case, Mr. Hickey received one-half, less than one-half of the recommended penalty.  The ARCI guidelines for a Class 3 drug call for a minimum of 60 days and up to a $1500 fine and the loss of a purses [
sic
].

   In this case, Mr. Hickey received 30 days per violation, 180 day suspension, no civil fine and the loss of the purses.  In this case, the stewards took into account Mr. Hickey's background and all of the other criteria that are listed in the rules, and they gave Mr. Hickey a break.

* * *

   *** [P]articularly because of Mr. Hickey's experience, particularly because of the surrounding circumstances which leads to the purchase and use, I'm going to recommend to the Board that Mr. Hickey's penalty should be the minimum that the ARCI requires, that's 60 days per violation." 

On October 18, 1994, at a Board meeting, board member Simon summarized the proceedings before the hearing officer and made a motion to suspend plaintiff.  Simon characterized plaintiff's testimony, stating:

   "At best Mr. Hickey has shown extremely poor judgment and a reckless disregard for the rules of the Illinois Racing Board.  At worse [
sic
], and this can be inferred from a fair reading of the testimony in this case and the exhibits that accompany it, he has created a fictitious story about acquiring an unknown substance from an unknown person to cover up a more sinister plot."

At the end of the presentation, Simon moved that the suspension be in effect from September 10, 1994, through December 31, 1994, and that he be ineligible for licensure from January 1, 1995, through September 10, 1995.  After discussion, four out of the six Board members present voted in favor of suspending plaintiff for 60 days per horse (360 days).  

Plaintiff filed for administrative review in the circuit court in October 1994.  The circuit court affirmed the Board's order on May 11, 1995, and stayed its decision for 10 days.  Plaintiff appealed the circuit court's decision.  On May 15, 1995, plaintiff filed an emergency motion for stay pending appeal.  The court granted the motion and stayed enforcement of the trial court's order pending appeal.  Defendant's motion to stay the stay was denied.  The Illinois Appellate Court issued its opinion on February 19, 1997.  In a new opinion issued March 5, 1997, the Illinois Appellate Court reversed the circuit court and vacated the Board's order.  
Hickey v. Illinois Racing Board
, 287 Ill. App. 3d 100, 108, 678 N.E.2d 21 (1997).  The appellate court held that the nine-member Board must achieve five votes to effect an order of revocation or suspension of occupational licenses and the Board's suspension order was null since it did not carry by the required majority vote.  See 
Hickey
, 287 Ill. App. 3d at 107.

On March 11, 1997, Board member Simon renewed his motion for a one-year suspension and the Board issued a new decision.  In an eight-member, unanimous decision, the Board suspended plaintiff for one year with credit for time served.  The March 11, 1997, Board order provided:  

"ACCORDINGLY, THE BOARD ORDERS THAT Peter Noel Hickey be suspended from licensure by the Illinois Racing Board for the ARCI recommended period of twelve months, less credit for any period of suspension previously served by him pursuant to the earlier ruling of the Stewards and/or the Board relative to this matter, and further, that Peter Noel Hickey not be permitted to have any horses owner [
sic
] or trained by him, or anyone acting in concert with him, vanned from his or any other farm to any racetrack in the State of Illinois."

Plaintiff filed a complaint for review of the March 11, 1997, Board order alleging that the findings were against the manifest weight of the evidence, contrary to the law, and that the Board lacked authority to issue its March 11, 1997, order.  Per plaintiff's request, the court issued a temporary restraining order on March 18, 1997, enjoining the Board from enforcing its order.  The circuit court later entered a stay of the Board's order.  In May 1998, the circuit court held: 

   "[T]he decision of the Racing Board is reversed and the cause is remanded for a determination of an appropriate sanction against Mr. Hickey consistent with the recommendation of the Stewards without regard to the Guidelines.  It is further ordered that there exists no just cause to delay enforcement of or appeal from this order."

Plaintiff has appealed the circuit court's order and the Board has cross-appealed.

ANALYSIS

I

We initially address whether we have jurisdiction to hear this matter.  In our view, we do.  The jurisdiction of the appellate court is limited to review of appeals from final judgments or orders, subject to certain statutory or supreme court exceptions.  
Cavanaugh v. Lansing Municipal Airport
, 288 Ill. App. 3d 239, 242, 681 N.E.2d 39 (1997). 
 Where the circuit court has the power to remand an agency decision for further hearings or proceedings, jurisdiction must necessarily remain with the circuit court until after disposition of these matters before jurisdiction may be conferred upon the appellate court. 
 
Mitrenga v. Martin
, 110 Ill. App. 3d 1006, 1008, 443 N.E.2d 268 (1982). 

It is well settled in Illinois that a statement such as "there exists no just cause to delay enforcement of or appeal from this order," alone, does not make a non-final order final and consequently appealable.  
Mitrenga
, 110 Ill. App. 3d at 1007, citing 
Gutenkauf v. Gutenkauf
, 69 Ill. App. 3d 871, 873, 387 N.E.2d 918 (1979).  Some instructive cases on the finality of orders that remand actions are 
Wilkey v. Illinois Racing Board
, 96 Ill. 2d 245, 449 N.E.2d 843 (1983),
 
Martin v. Cajda
, 238 Ill. App. 3d 721, 606 N.E.2d 566 (1992), and 
Kvidera v. Board of Fire & Police Commissioners
, 168 Ill. App. 3d 380, 522 N.E.2d 757 (1988).  In 
Wilkey
, the supreme court held that the finality of an order which remands an action to the agency turns on the substance of the instructions.  The court stated:

"'[I]f, upon remandment, the trial court has only to enter a judgment or decree in accordance with the directions of the reviewing court, or to conduct further proceedings on uncontroverted incidental matters, then, irrespective of the remanding clause in the judgment order, the judgment of the Appellate Court is final and reviewable.'"  
Wilkey
, 96 Ill. 2d at 249, quoting 
Cory Corp. v. Fitzgerald
, 403 Ill. 409, 414, 86 N.E.2d 363 (1949).  

On the other hand, "'where a cause is remanded for a new trial or other further proceedings involving disputed questions of law or fact, the judgment of the Appellate Court is not of a final character. [Citations.]  The ultimate question to be decided in each case is whether the judgment fully and finally disposes of the rights of the parties to the cause so that no material controverted issue remains to be determined.'"  
Wilkey
, 96 Ill. 2d at 249, quoting 
Cory
, 403 Ill. at 414-15.

In 
Cajda
, the court used the 
Wilkey
 standard and found that the trial court order, which required the Board to enter an order of discharge, was final and appealable.  
Cajda
, 238 Ill. App. at 725.  The court reasoned that "[t]he order left nothing to the discretion of the Board, nor did it necessitate any further proceedings other than the mere ministerial task of entering the prescribed order."  
Cajda
, 238 Ill. App. at 725.  That order, in our view, directs a ministerial act.

In 
Kvidera
, the plaintiff was suspended and ultimately discharged for violating various rules of the Schiller Park police department.  In 
Kvidera
, the circuit court confirmed the findings of the Board of Fire and Police Commissioners but reversed the penalties imposed and remanded for "an appropriate lesser sanction."  
Kvidera
, 168 Ill. App. 3d at 381.  On remand, the board reaffirmed its original decision as to each count.  The circuit court again reversed the board's penalties.  The board, however, determined that its sanctions were appropriate and asked the court to confirm the suspension and discharge orders.  The court denied the motion and reversed the sanctions as excessive.  The board appealed and the plaintiff cross-appealed.  The appellate court dismissed both appeals, explaining that "to have an appealable order the circuit court should either affirm or direct the board to impose a specific sanction."  
Kvidera
, 168 Ill. App. 3d at 382.

In the instant case, the circuit court remanded the case for the Board to make a "determination of an appropriate sanction against Mr. Hickey consistent with the recommendation of the stewards without regard to the Guidelines."  In our view, this order is analogous to the order in 
Cajda
, in that nothing is left to the discretion of the Board other than the ministerial act of entering an order consistent with the recommendation of the stewards, without regard to the ARCI Guidelines.  Unlike the remand in 
Kvidera
, which afforded the Board some discretion, the remand in the instant case, in effect, directs the Board to enforce a sanction in conformance with the recommendation of the stewards.  In our view, the decision of the circuit court was a final order.  Accordingly, this court has jurisdiction.

II

Plaintiff contends that the Board lacked
 
jurisdiction to enter its March 11, 1997, order subsequent to the appellate court's opinion dated March 5, 1997, reversing the trial court's decision, because the appellate court's mandate had not yet issued.

Illinois Supreme Court Rule 369 provides:

"   (a) Filing of Mandate.  The clerk of the circuit court shall file the mandate promptly upon receiving it.

   (b) Dismissal or Affirmance.  When the reviewing court dismisses the appeal or affirms the judgment and the mandate is filed in the circuit court, enforcement of the judgment may be had and other proceedings may be conducted as if no appeal had been taken.

   (c) Remandment.  When the reviewing court remands the case for a new trial or hearing and the mandate is filed in the circuit court, the case shall be reinstated therein upon 10 days notice to the adverse party."  134 Ill. 2d R. 369.

Plaintiff relies upon 
Butler v. State Board of Elections
, 188 Ill. App. 3d 1098, 545 N.E.2d 165 (1989).  Plaintiff's reliance on 
Butler
 is misplaced.  In 
Butler
, the plaintiff requested the circuit court to order the Illinois State Board of Elections to certify him as a candidate for the state senate.  
Butler
, 188 Ill. App. 3d at 1099.  Plaintiff was denied relief by the circuit court.  
Butler
, 188 Ill. App. 3d at 1099.  The appellate court remanded the cause to the circuit court with directions that additional evidence be taken.  
Butler
, 188 Ill. App. 3d at 1100.  Before the mandate issued, the circuit court held additional hearings and ordered the election board to certify Butler as a candidate.  
Butler
, 188 Ill. App. 3d at 1100.  The appellate court held that the circuit court lacked jurisdiction to issue its order prior to receipt of the mandate.  
Butler
, 188 Ill. App. 3d at 1100.

Butler
 is not analogous because, in the instant case, in contradistinction to 
Butler
, neither the judgment of the appellate court nor the mandate that issued directed the circuit court to take any action.  Significantly, the complete language of the mandate that was filed on May 6, 1997, reads:  "The judgment of the circuit court is reversed."  Here, having determined that the Board's order was a nullity because a majority vote was lacking, the appellate court vacated the Board's order and reversed the circuit court.  
Hickey
, 287 Ill. App. 3d at 107-08. 

Judgments of the appellate court are operative from the time of their entry until they are arrested either by the appellate court in an appropriate order or by writ of 
certiorari
 issuing from the supreme court, or a reversal or modification by the supreme court.  
Upton v. Swedish American Hospital
, 157 Ill. App. 126, 128 (1910).  Where there has been an appeal from a circuit court judgment, the judgment of the appellate court becomes final when entered, and the mandate of a court of review is the transmittal of the judgment of that court to the circuit court and revests it with jurisdiction.  
Brandon v. Caisse
, 172 Ill. App. 3d 841, 844, 527 N.E.2d 118 (1988).  The jurisdiction of the circuit court is not revived unless the case is remanded to it by the appellate court.  It is the filing of the mandate from the appellate court in the circuit court that reinvests jurisdiction in the circuit court.  
Bank of Viola v. Nestrick
, 94 Ill. App. 3d 511, 514, 418 N.E.2d 515 (1981). 

An instructive case is 
PSL Realty Co. v. Granite Investment Co.
, 86 Ill. 2d 291, 427 N.E.2d 563 (1981)
.  In 
PSL Realty Co.
, one of the issues addressed by the Illinois Supreme Court was whether the effective date of the appellate court's judgment dissolving a temporary injunction and receivership jurisdiction became effective on the date the judgment was filed or on the date that a mandate issued.  
PSL Realty Co.
, 86 Ill. 2d at 304-05.  Relative to this issue
, the Illinois Supreme Court in 
PSL Realty Co.
 wrote:

   "
We must first determine the effective date of the judgment of the appellate court
.  
That judgment was final when entered and not on the date that the mandate of the appellate court issued
. [Citation.] ***  Our Supreme Court Rule 368(a) (73 Ill. 2d R. 368(a)) provides that the mandate of the reviewing court shall be transmitted to the circuit not earlier than 21 days after the entry of the judgment.  
The date of the issuance of the mandate does not control the effective date of the appellate court judgment
. *** 
Also, the filing of a petition for rehearing does not alter the effective date of the judgment of a reviewing court unless that court allows the petition for rehearing, in which event the effective date of the judgment is the date that the judgment is entered on rehearing
.  (See 73 Ill. 2d R. 367(a).) ***

   The judgment of the appellate court entered on July 23, 1976, was final as to the dissolution of the receivership." (Emphasis omitted and added.)  
PSL Realty Co.
, 86 Ill. 2d at 304-06.  

Accordingly, we hold that the judgment of the appellate court vacating the Board's March 5, 1997, order became operative when entered and the Board had jurisdiction and authority to enter the March 11, 1997, order.

III

Plaintiff's next contention is that the Board acted arbitrarily and capriciously, thereby depriving him of his due process rights during the administrative process.  Specifically, plaintiff asserts that the Board violated his due process rights when it failed to immediately report a positive finding on World Class Splash; acted in an arbitrary and capricious manner since it failed to follow its own rules and customs; acted in an arbitrary and capricious manner and in violation of the plaintiff's constitutional rights in suspending his occupational license since the Board's rules are vague, ambiguous, and lack specific penalties; and abused its discretion in relying on matters which were not part of the record and in doubling the penalty imposed by the stewards.  Plaintiff also contends that the Board violated his constitutional rights in  suspending his occupational license for a period of 360 days.  We disagree.

Relative to plaintiff's contention that his due process and equal protection rights were violated by the stewards and the Board by failing to notify him earlier that albuterol was detected in one of his horses
, we recognize that a license to pursue one's occupation as a trainer of harness racers is a property interest protected by the due process clause.  
Edwards v. Illinois Racing Board
, 187 Ill. App. 3d 287, 290, 543 N.E.2d 172 (1989).
  
In a proceeding involving revocation of a professional license, due process law requires a definite charge, adequate notice, and a full, fair and impartial hearing.  
Goranson v. Department of Registration & Education
, 92 Ill. App. 3d 496, 499, 415 N.E.2d 1249 (1980).

Section 509.190(a) of the Illinois Administrative Code provides, in pertinent part:

"Upon receipt of a positive laboratory result, the stewards or the Executive Director of the Board shall immediately direct that no purse money shall be awarded to the horse in question pending a final determination by the stewards or the board of the accuracy of the laboratory's report.  The stewards *** shall notify the owner, trainer, and any other person having care or custody or control of the horse."
  
11 Ill. Adm. Code §509.190(a) (1994).

While general screening usually took 5 to 10 days, isolation of albuterol in the sample taken from World Class Splash took approximately 33 days.  As early as July 29, 1994, albuterol was detected in one of plaintiff's horses, but it could not be confirmed.  Relative to the delay in the instant case, the director of the Board testing laboratory, Kalita, testified that the lab had no way of knowing the identity of the horses or their owners/trainers because the samples were labeled by number.  Kalita believed that prior to the instant case, the last time that albuterol had been confirmed by the lab was in 1991.  As the lab worked on developing a new albuterol confirmation process, the five remaining horses involved continued racing.  Kalita notified the executive director of the Board around August 4, 1994, that her initial test indicated the presence of albuterol and that the lab chemists would conduct further tests before she would confirm.  Plaintiff was notified of the positive results in late August 1994.  In a report dated September 22, 1994, Kalita sent the director of the Board a letter detailing the chronology of methods used to detect the albuterol.  In our view, the delayed notification in the instant case was not unreasonable and neither plaintiff's due process nor equal protection rights were violated.

Plaintiff also contends that the Board's "suspension is unsupported by any finding that the violation affected the outcome of the race," and in so doing, the Board violated "the Rules and established Board policy that a disqualification will not be imposed where a violation of the Rules did not affect the outcome of the race."  

The Illinois Horse Racing Act (the Act) provides that the Board may, in accordance with section 15 of the Act, revoke or suspend the occupation license of a horse trainer or owner.  230 ILCS 5/16(a) (West 1994).  In the event of revocation, the occupation license of the person suspended shall be suspended pending a hearing of the Board.  230 ILCS 5/16(b) (West 1994).  The Board is not bound by the technical rules of evidence, but all evidence offered before the Board shall be reduced to writing and the findings of the Board will be permanently preserved and constitute the record of the Board in such case.  230 ILCS 5/16(e) (West 1994). 
 Finally, 
t
he Illinois Horse Racing Act states that the Board "shall suspend or revoke" the license of the individual member which administered or allowed the administration of any substance that "may affect the speed of a horse at any time, except those chemical substances permitted by ruling of the Board."  230 ILCS 5/36(a) (West 1994). 

Section 509.200(a) of the Illinois Administrative Code provides:  "Every trainer has the duty to guard or cause to be guarded each horse trained by him/her in such a manner as to prevent any person *** from administering to such horse any foreign substance ***."  11 Ill. Adm. Code §509.200(a) (1994).  Moreover, "[e]very trainer has the duty to be familiar with the medication rules of the Board and reasonably familiar with the foreign substances he/she administers ***."  11 Ill. Adm. Code §509.200(b) (1994).

In the instant case, following the inquiry, the stewards decided to suspend plaintiff's license.  Subsequently, a hearing officer heard plaintiff's case.  The transcripts and evidence before the hearing officer were presented to the Board for its review.  Following a review of the transcripts and evidence, the Board suspended plaintiff's license.  

We hold that the Board's procedural actions were in accordance with the Illinois Horse Racing Act and the Illinois Administrative Code.  Further, we find the plaintiff's argument without merit in that the record clearly indicates that albuterol was not a Board-approved chemical substance and it could enhance a horse's performance.

Plaintiff further contends that sections 509.40, 509.50, 509.60, 509.200, and 1410.70 of the Illinois Administrative Code "each allow for arbitrary enforcement since the rules fail to describe 'with sufficient particularity' what an individual must do in order to satisfy the rule."  
We disagree.

Sections 509.40 and 509.50, the foreign substance ban and the 24-hour ban, are unambiguous.  Under these regulations, "[n]o horse participating in a race *** shall carry in its body any foreign substance ***, except as provided in Section 509.90(a), Section 509.90(c) and Section 509.95."  11 Ill. Adm. Code §509.40 (1994).  Further, "[a]ny person who administers *** any foreign substance to any horse *** shall have his license suspended or revoked and may also be subjected to a civil penalty."  11 Ill. Adm. Code §509.60(a) (1994).  

Section 509.60(b) clearly states the criteria on which penalties for violations of the rules are based.  Section 509.60 (b) provides, in pertinent part:

"Penalties for violations of this Section shall be based on the following criteria:

   1) the nature of the foreign substance; ***

   2) the accessibility of the drug; ***

   3) the age and experience of the violator; ***

   4) whether the violator has ever been the subject of a medication ruling in this or any other racing jurisdiction; 

   5) what action, if any, was taken by the violator of the rules to avoid such violation; 

   6) the purse of the race."  11 Ill. Adm. Code §509.60 (1994).

Section 1410.70 provides:  "A trainer shall at all times be responsible for the condition of his horse, and for the protection of his horse against fraudulent practices, including administration of prohibited drugs by any persons."  11 Ill. Adm. Code §1410.70 (1994).   The sections specified by plaintiff in the instant appeal are not so indefinite that they confer upon the Board an arbitrary and unfettered power to determine to whom the law will apply. 

Plaintiff's next assertion is that the Board violated his due process rights in relying on information outside the record and in doubling the penalty to 360 days.
  
Hearings before an administrative agency should be investigatory proceedings instituted for the purpose of ascertaining and making findings of facts.  
Six-Brothers
, 192 Ill. App. 3d at 983.  Absent a statutory provision to the contrary, it is not necessary that those persons charged with making findings of fact, conclusions of law, recommendations or administrative decisions be personally present to hear evidence presented during the administrative hearing.  
Betts v. Department of Registration & Education
, 103 Ill. App. 3d 654, 661, 431 N.E.2d 1112 (1981).  An administrative hearing may be conducted by a hearing officer who refers the case for final determination to a decision-making body which has not "heard" the evidence in person.  
Starnawski v. License Appeal Comm'n
, 101 Ill. App. 3d 1050, 1053, 428 N.E.2d 1102 (1981); 
Homefinders, Inc. v. City of Evanston
, 65 Ill. 2d 115, 128-29, 357 N.E.2d 785 (1976).  Due process is satisfied when the decision making body considers the evidence contained in the report of proceedings before the hearing officer and bases its determination upon it.  
Brock v. Police Board
, 205 Ill. App. 3d 1035, 1043, 563 NE.2d 970 (1990).

Relative to plaintiff's argument that his due process rights were violated by the Board when they doubled his penalty, we find 

Ray v. Illinois Racing Board
, 113 Ill. App. 3d 510, 447 N.E.2d 886 (1983), instructive.  In 
Ray
, the appellate court reviewed the Illinois Horse Racing Act and held that there was "no merit in plaintiff's argument that the Board was bound by the recommendation of the stewards" and reversed the portion of the trial court's order that reversed the Board's imposition of a fine on the plaintiff.  
Ray
, 113 Ill. App. 3d at 515. 
 The court noted that the hearing before the Board following a recommendation of the stewards must be a 
de
 
novo
 hearing, which meant it was a new adversary proceeding which is neither dependent upon nor limited by the proceedings below.  
Ray
, 113 Ill. App. 3d at 514-15.

IV

The subject of the defendants' cross-appeal is whether the circuit court erred in reversing the Board's 360-day sanction when that sanction was not an abuse of discretion.  The sanction was reversed and remanded by the circuit court for an appropriate sanction consistent with the steward's recommendation, without use of the Guidelines.  The Board asserts that the 360-day sanction was justified in light of the circumstances.  The Board also contends that "the Board could rely on the guidelines as evidence of the industry standard in making its decision."    

The Administrative Review Law provides that findings and conclusions of an administrative agency on questions of fact are to be considered 
prima
 
facie
 true and correct.  735 ILCS 5/3-110 (West 1994).  The question of whether a trial court should remand a case to the administrative tribunal that rendered a decision for further hearings is a matter that lies within the discretion of the trial court.  
Calabrese v. Chicago Park District
, 294 Ill. App. 3d 1055, 1065, 691 N.E.2d 850 (1998).  The proper standard of review for a circuit court reviewing the decision of an administrative agency is whether the decision is against the manifest weight of the evidence.  
Coleman v. Illinois Racing Board
, 124 Ill. 2d 218, 221, 529 N.E.2d 520 (1988).  A reviewing court may overturn sanctions imposed by an agency that are overly harsh in light of the mitigating circumstances.  
Edwards v. Illinois Racing Board
, 187 Ill. App. 3d 287, 293, 543 N.E.2d 172 (1989).  The proper test is not whether the reviewing court would have imposed a lesser sanction if it were making the decision in the first place, but whether, in view of the circumstances, the agency acted unreasonably or arbitrarily in rendering its decision.  
Edwards
, 187 Ill. App. 3d at 293. 

The record establishes that Hickey has been in the business of horse racing for 30 years.  At the administrative review hearing, he stated that he had been fined previously.  He admitted to feeding his horses a substance that was not labeled, for which he paid $1,000 to a person whom he met at a horse auction.  Plaintiff did not know anything about this person's background.  The substance was detected and confirmed to be a Board-prohibited additive.  Based on our review of the record, we hold that:  (1) the Board could rely on the Association of Racing Commissioners International Drug Testing Program Guidelines as evidence of the industry standard in making its decision; (2) the Board's 360-day suspension was not unreasonable or arbitrary; and (3) the circuit court erred by entering its order to reverse and remand.

For the foregoing reasons, the judgment of the trial court is reversed.

Reversed.

GORDON and McBRIDE, JJ., concur.